[Civ. No. 12924.   First Dist., Div. One.   Feb. 4, 1946.]

MARGARET HALSTEAD, Respondent, v. EARL T. HAL-STEAD, Defendant; CLARICE HALSTEAD, Appellant.

C. Huntington Jacobs for Appellant.

Simeon E. Sheffey and Naomi Hammond for Respondent.

ATTERIDGE, J. pro tem.—This is an appeal from an order denying appellant's application to vacate, i. e., discharge, two attachments which had been levied pursuant to the requirements of two antecedently issued writs commanding such action. All proceedings taken in relation to the issuance of the writs and the levies made pursuant thereto were regular and legal.

In May, 1942, plaintiff Margaret Halstead brought an action against her former husband, Earl T. Halstead, for his alleged breach of his written agreement to pay to her monthly a minimum sum of $50. The agreement further provided for an increase in such monthly payments in the ratio in which Earl T. Halstead's pay should increase while serving as an officer in the United States Army. The agreement was entered into in September, 1932, and was also embodied in a decree of divorce obtained by the parties in October, 1933. Mr. Halstead was then an army lieutenant. In her complaint plaintiff alleged that defendant was then in default upon his said contractual obligation in an amount approximating $3,000. The first writ of attachment was issued contemporaneously with the filing of said complaint, and an alias writ was issued on December 6, 1943. The items of property attached were two bank accounts. In the interval between the two levies, appellant and applicant, Clarice Halstead, who is Halstead's second wife, had by her withdrawals from the bank account last attached in point of time depleted the same from an amount in excess of $1,500 to the sum of $5.00.

At the time when the action was commenced in 1942, and at all times subsequent thereto until his very recent liberation, Halstead was a prisoner of war of the Japanese armed forces on Tai Waen Island, in or near the Pacific theater of World War II, and he was also at all of said times a member of the United States Army with the rank therein of lieutenant colonel. His present wife, Clarice Halstead, filed the here-

inbefore-referred-to application for the discharge of said attachments, alleging that she did so in behalf of Colonel Halstead, and in claimed pursuance of the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.A., App., § 501 et seq.) and the particular provision upon which she premises her claim for the said requested action is section 523 of title 50, United States Code Annotated, Appendix (§ 203 of the act). She similarly prosecutes this appeal in his behalf, but had no specific or other personal authorization from him to take either of said steps. Her contention on this appeal is that under the evidentiary facts before it, and under the above-specified section of said last-mentioned act, the trial court had no discretion except to grant her application. Not only does she contend that the trial court abused its discretion in denying the application, but she further, in effect, contends that it had none. It will presently appear that both contentions are without merit.

Section 203 of the Soldiers' and Sailors' Civil Relief Act (50 U.S.C.A. App., § 523) reads as follows:

"In any action or proceeding commenced in any court against a person in military service, before or during the period of such service, or within sixty days thereafter, the court may, in its discretion, on its own motion, or on application to it by such person or some person on his behalf shall, unless in the opinion of the court the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service—

"(a) Stay the execution of any judgment or order entered against such person, as provided in this Act; and

"(b) Vacate *or* stay any attachment or garnishment of property, money, or debts in the hands of another, whether before or after judgment as provided in this Act." (Italics added.) (N.B. Only the last-quoted subdivision "b" of the section is pertinent to or involved on this appeal.)

It is first to be observed that it clearly appears with unmistakable certainty that the said subdivision "b" of the statute sets up on its very face and confers upon a trial court a most definitely stated discretion to itself elect whether or not it shall, even in a proper case, "vacate" or "stay" an attachment. Under the statute a court which had acted in accord with either one of said alternatives certainly could not be commanded to act in the other, nor could its said action in so doing be annulled by writ of review. In the

present instance the trial court did not act in precise accordance with the requirements of the statute by ordering that all proceedings under the writs of attachment be stayed,—and thereby fully complied with the only mandatory requirement of the statute in cases where any action is called for. On this appeal appellant's counsel stated that he had been unable to find any judicial precedent interpretative of the statute which recognized any discretion in a trial court to deny such an application. The reason for his inability in this respect is obvious,—the statute is itself so clear that it is difficult to perceive how anyone could reasonably question the existence of the discretion it so plainly sets up on its very face. For this reason alone there has been a dearth of precedents in that respect. The existence of such a discretion, however, is expressly recognized in the case of *Shaffer* v. *Shaffer*, 69 Ohio App. 447 [42 N.E.2d 176, 178], where the court states: "The 5th ground of the motion [to discharge an attachment] is that the defendant is in military service on active duty." In its disposition of this ground, the reviewing court said: "The [Soldiers' and Sailors' Civil Relief] act further vests discretion in the trial judge to vacate *or* stay any attachment as therein provided. The act did not in the situation here presented require the court to discharge the attachment on this ground of the motion." (Italics added.)

The nature and extent of the wide discretion which is generally vested in trial courts in passing upon various motions made under the Soldiers' and Sailors' Civil Relief Act of 1940 has been heretofore the subject of extensive consideration by this court in *Johnson* v. *Johnson*, 59 Cal.App.2d 375 [139 P.2d 33], and in referring to the act generally on page 383 the court, speaking through its Presiding Justice, declared: "The Congress determined that, in considering the rights of all concerned, they could all be best protected, including the rights of those in the service, by vesting a wide discretionary power in the trial courts of the nation. It was believed that the rights of those in service would be adequately protected by the trial judges, who, in each case, could determine whether the service man's rights would be adversely affected by the fact of his service. The Congress also determined that the rights of civilian litigants must also be considered."

The last-above-quoted sentence is especially apposite

to the present appeal, when consideration is given to the nature of the rights of the present parties as they appeared to the trial judge in determining the motion to vacate the attachments. Plaintiff had alleged in her complaint that the defendant was obligated to her upon a written contract in the sum of approximately $3,000, which was then due and unpaid. The obligation was unsecured. These factors entitled her to a writ of attachment. (Code Civ. Proc., § 537.) She further had qualified herself for the issuance of the writ by substantial compliance with sections 538 and 539 of the Code of Civil Procedure by the filing of the therein prescribed affidavit and by furnishing a good and sufficient undertaking in support of the attachment. Under the given circumstances, these writs issued, not as precepts emanating from the exercise of judicial favor or discretion, but as writs of right.

The usual and main purpose of an attachment is to secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action. As early as 1851 the second Legislature assembled in California saw fit to enact into law, and to grant to unsecured creditors whose demands arose from contracts, the provisional and summary remedy known as "attachment" proceedings in order to insure that the ends of successful litigation should not be fruitlessly pursued or frustrated. (Stats. 1850-1853, p. 539 et seq.) These statutes as thus contained in the early Practice Act were enacted almost *in haec verba* in the Code of Civil Procedure, and throughout the years have undergone surprisingly little alteration. Our courts during the same period provided only that in such proceedings there shall have first been shown a sufficient compliance with the provisions under which the writs are to issue, thus uniformly protecting and insuring a qualified litigant in his right to security at the hands of a defendant who allegedly is in default upon a contractual obligation.

These considerations have been adverted to in order to point out that the trial court had no light or welcome duty to discharge in choosing between what at most might be, on the one hand, a seeming appreciation of the patriotic performance of military duty by a man who was then most unfortunately situated and, on the other, the denial to a litigant of a substantial and long judicially respected right. It clearly appears, however, that the court made the right determination in denying the application. First of all, its order

staying all proceedings preserved the *status quo* of the litigation; no adverse right of the plaintiff could ripen into a judgment while the defendant continued to be absent on military service or remained in the hands of the Japanese. All rights of the defendant in the funds under attachment were fully secured, by a good and sufficient undertaking, against any damages which could possibly be sustained by reason of the attachment. The rights of any third party in and to the funds are not involved, but were such rights involved they would likewise be similarly stayed by the court's order staying all proceedings.

As a matter of fact, however, the record shows that Colonel Halstead was in nowise injured by the court's refusal to abate the attachment. He was in the anything but merciful hands of the Japanese, where he personally was unable to withdraw or use the said funds for any purpose. No one else could withdraw them unless there was outstanding an executed power of attorney of his own creation, and, as appeared on the hearing, it would not have been possible to transmit any of said funds to him. Plaintiff testified that during the period between his capture and the hearing Colonel Halstead's pay had continued to accumulate at the rate of $700 per month, while appellant testified in this connection that it accumulated at the monthly rate of $450, and was such as readily to permit the satisfaction of defendant's entire current obligation to plaintiff and to leave him with a fairly large cash surplus. In either event, the sum accumulated was substantial. Appellant had placed $2,000 of his prior accumulations in her own personal savings account. Plaintiff, on the other hand, had received no payments from Colonel Halstead under the contract since before the fall of Manila early in 1942. At that time, she testified, he was substantially in arrears in his payments to her under the contract. His intermarriage with appellant had occurred in October, 1940.

The evidence further disclosed that plaintiff's situation was most unfortunate. She had been largely dependent for her livelihood upon the payments theretofore received by her under the contract. She lived with her daughter who worked, and she herself engaged in part-time work, but her ability to do so has become impaired by the condition of her health.

The trial judge with great patience entertained this application on five distinct occasions, covering a period of seven months, and was so considerate of the interests of all con-

cerned that he even conducted a night session of his court. In fairness to Colonel Halstead, it further should be stated that it does not appear that he had personal knowledge of the application, or that he personally approved the same. In fact, about three weeks before the fourth and next to final hearing thereof, plaintiff received a letter from him reading as follows:

"Dear Mother: [a term by which, she testified, he usually addressed her] I am permitted to tell you very little except that I am well and in good health and am slowly gaining weight. By radio I allotted part of my pay to the American Trust and instructed them to give you your monthly check. I do not know if my letters were received so am trying it again. Tell me if you are receiving your checks. If not, present this letter to the bank—they will credit your account with the $48.00 monthly from March 1, 1942. [It should be mentioned that the variance between $48 and the sum of $50 specified in the contract arises from the deduction of $2.00 monthly to cover certain insurance policies.] Do you hear from Zachary [their son, also an army officer] regularly? Advise him of this letter. I have not heard from him. Best love to you, Ethel [plaintiff's daughter] and Zachary. E. T. Halstead, Lt. Colonel, U. S. Army."

This letter came from Tokyo. It is as against the thus expressed wishes of the soldier in whose behalf the application we have just reviewed is claimed to have been made that appellant contends that the trial court in its denial thereof abused its discretion. This letter, as are all the other appearing circumstances, is in eloquent refutation of the merits of the claim. It is stated by the United States Court of Appeals, Eighth Circuit, that: "A motion under the [Soldiers' and Sailors' Civil Relief] act is addressed to the discretion of the trial court. The mere fact of service in the armed forces of the United States does not entitle a party to a stay of proceedings against him as a matter of right. The trial court may and should deny the stay when it is apparent that the party absent in the military service will not be materially prejudiced. . . ." (*Cross* v. *Williams,* 149 F.2d 84, 86.)

The further reasons advanced by the appellant in support of her application and her appeal are clearly unsubstantial. She contends that the continued existence of the attachment impairs the credit of Colonel Halstead and would have a tendency toward retarding his further promotion in the army after the war. We cannot believe that the War Department would seriously hold such a circumstance against a man who

had been for more than two years a prisoner of war of the Japanese; and it further was most unlikely that the existence of the attachment would ever come to its attention, since the funds were not attached at their source but were levied on after they had come into the hands of a banking institution. If his credit ever has been impaired, it will be speedily repaired from the funds which have accumulated during his enforced absence.

Appellant's counsel advises us that one of the main purposes of the appeal was to secure from an appellate court a construal of the meaning and effect of the hereinbefore-specified section 203 of the Soldiers' and Sailors' Civil Relief Act in conformation with his own conception thereof. It is, however, hard to conceive of a case where the underlying equities and appearing circumstances render it as poorly adapted for the achievement of said purpose as the one which has been selected for such test.

The order from which the appeal is taken is affirmed.

Peters, P. J., and Ward, J., concurred.