[Civ. No. 15140. Third Dist. Feb. 20, 1976.]

ROY W. SYZEMORE, Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO, Defendant and Respondent.

518

## COUNSEL

DeCristoforo & Sullivan and Albert E. Combatalade for Plaintiff and Appellant.

Memering, Stumbos, DeMers, Ford & Norris and Dianna Z. Hoffman for Defendant and Respondent.

## OPINION

**REGAN, J.**—This is an appeal by the petitioner, Roy W. Syzemore, from an order of the superior court dated November 22, 1974, denying his petition under section 946.6 of the Government Code for relief from the requirement of presenting a claim for damages against the County of Sacramento. Petitioner contended that his failure to present a claim within 100 days as required by section 911.2 of the Government Code was through mistake, inadvertence, surprise or excusable neglect.

The petitioner also appeals from the court's order of December 17, 1974, denying his motion for reconsideration. Petitioner's motion for reconsideration was made on the ground that the 100-day time limitation of Government Code section 911.2 was tolled by virtue of section 525 of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.A. App. § 501 et seq.

The petitioner lost the vision of his right eye as the result of a single-vehicle accident in which he was involved at approximately 11:30 p.m. on the evening of April 17, 1974. The automobile which he was driving plunged off the end of Palm Avenue, an unmarked, dead-end

street in the County of Sacramento. At the time of the accident petitioner was 22 years of age and was on active duty with the United States Air Force. Petitioner was hospitalized from April 18, 1974, through April 26, 1974, and again from May 6, 1974, through May 31, 1974. During the period of time he was hospitalized he was usually given passes for the weekend and he would spend the time at his home in Fresno. After May 31, 1974, petitioner was treated on an outpatient basis and was given convalescent leaves. He was under doctor's orders to take it easy and try to compensate for his lost vision.

On July 26, 1974, 100 days after petitioner's accident, a claim was presented to the County of Sacramento by the United States Air Force for medical care furnished to date to petitioner in the amount of $4,158. The claim set forth, among other things, the date, place and circumstances of the accident.

On or about August 7, 1974, the petitioner returned to work with the United States Air Force. On August 14, 1974, 119 days after petitioner's accident, in a telephone call from the office of the Judge Advocate at Mather Air Force Base, petitioner was advised he had a potential claim for damages and that he should consult an attorney. Petitioner was referred to Anthony DeCristoforo, Jr., who saw him on the same day, August 14, 1974.

Petitioner did not know he had a potential claim for damages until he was contacted by the office of the Judge Advocate on August 14, 1974. He was unaware of the requirement of the 100-day claim statute, was inexperienced in legal matters, and had never been involved in litigation except for a divorce action.

On August 19, 1974 (approximately four months after the accident), an application for leave to present a late claim was presented to the County of Sacramento on petitioner's behalf pursuant to section 911.4 of the Government Code. The application was deemed denied on October 3, 1974, in accordance with section 911.6 of the Government Code.

On November 1, 1974, petitioner filed his petition for relief from the requirement of presenting a claim, which petition was denied. A subsequent motion for reconsideration was likewise denied. This appeal followed.

■ Petitioner contends that Government Code section 911.2 is tolled by section 525 of the Soldiers' and Sailors' Civil Relief Act of 1940, which reads as follows: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceedings shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 [Oct. 6, 1942] be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax or assessment."

■ Respondent argues that the protection of the Soldiers' and Sailors' Civil Relief Act does not extend to the petitioner. (See *Application of Martin* (1952) 195 F.2d 303, 305 [39 Ct. Cust. & Pat. App. 1128] [act does not encompass service in merchant marine]; *Abbattista* v. *United States* (D.N.J. 1951) 95 F.Supp. 679, 681-682; *Wanner* v. *Glenn Ellen Corporation* (D.Vt. 1974) 373 F.Supp. 983, 985 [members of the U.S.A.F. not included within statutory language of § 511].) There are at least two cases, however, which appear to hold that section 525 applies to members of the Air Force. (See *Diamond* v. *United States* (1965) 344 F.2d 703 [170 Ct.Cl. 166]; *Kenney* v. *Churchill Truck Lines, Inc.* (1972) 6 Ill.App.3d 983 [286 N.E.2d 619, 625-626].)

In any event, the county's argument appears to overlook the language of section 464 and 466, subdivision (c), of the Military Selective Service Act of 1967. (50 U.S.C.A. App. § 451.) Section 464 reads, in part, as follows: "[A]ll of the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended . . . shall be applicable to all persons in the armed forces of the United States, including all persons inducted into the armed forces pursuant to this title . . . until such time as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, is repealed or otherwise terminated by subsequent Act of Congress . . . ."

Section 466, subdivision (c), states: "The term 'armed forces' shall be deemed to include the Army, the Navy, the Marine Corps, the *Air Force*, and the Coast Guard." (Italics added.)

We think these provisions are conclusive of the question raised and hold that petitioner is a member of that class protected by the Soldiers' and Sailors' Civil Relief Act of 1940.

In denying petitioner's motion for reconsideration, the trial court ruled that it had the discretion to decide whether or not to apply section 525. The court apparently viewed as the determinative factor in the exercise of its discretion whether or not petitioner had established that his military service had prevented him from presenting a timely claim. The court then found that the petitioner had been in Sacramento all of the time, had the services of the Judge Advocate available to him, and thus suffered no prejudice by reason of his military service.

The petitioner argues that once the fact of active military duty is established, the application of section 525 is mandatory. Petitioner contends the use of the word "shall" in section 525 connotes mandatory action. He further contends that had Congress intended to make section 525 discretionary, it would have so provided, as it did in section 521 of the act.[1]

The petitioner cites a number of cases which appear to support his proposition that the section is mandatory. (See, e.g., *Ray* v. *Porter* (6th Cir. 1972) 464 F.2d 452, 455-456; *Wolf* v. *C. I. R.* (3d Cir. 1959) 264 F.2d 82, 87-88; *Zitomer* v. *Holdsworth* (E.D.Pa. 1959) 178 F.Supp. 504; *Worlow* v. *Mississippi River Fuel Corporation* (Mo. 1969) 444 S.W.2d 461, 463-464; *Jones* v. *Garrett* (1963) 192 Kan. 109 [386 P.2d 194, 200]; *Van Heest* v. *Veech* (1959) 58 N.J.Super. 427 [156 A.2d 301, 303]; *Illinois Nat. Bank of Springfield* v. *Gwinn* (1945) 390 Ill. 345 [61 N.E.2d 249, 254, 159 A.L.R. 468]; *Le Maistre* v. *Leffers* (1948) 333 U.S. 1 [92 L.Ed. 429, 68 S.Ct. 371] [semble]; *Burkhead* v. *Briggs* (1948) 86 Cal.App.2d 803, 808-809 [196 P.2d 73] [semble].) This line of cases, in general, stands for the following propositions: section 525 involves no element of discretion; a showing of prejudice to the person in military service is no part thereof; the critical factor which brings section 525 into play is military service, and when that circumstance is shown, the period of limitation is

---

[1]This section reads: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [§§ 501-548 and 560-590 of this Appendix], unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

automatically tolled during the duration of that service; the language of the section requires no interpretation since it is unambiguous; and, section 525 is mandatory and has been so interpreted.

Respondent, on the other hand, contends the relief afforded by the act is subject to judicial discretion to insure against undue prejudice to all parties involved. It notes that section 521 (see fn. 1) is discretionary in nature, and specifically refers to "this Act." In interpreting section 521 of the act, the court in *Luckes* v. *Luckes* (1955) 245 Minn. 141 [71 N.W.2d 850, 852-853, 54 A.L.R.2d 384], states as follows: "The act is to be construed in the light of the purpose for which it was enacted and the entirety of its language, subject to the controlling decisions of the United States Supreme Court. Declaratory of the act's purpose is § 510 which provides that the enforcement of civil liabilities, *which may prejudice the civil rights of persons in the service,* shall be suspended *in order to enable such persons to devote their entire energy to the defense needs of the nation.* Pursuant to such purpose it is evident that the act was not intended to provide for the suspension of the enforcement of any civil liabilities unless such enforcement would *prejudice* the soldier or sailor. It follows that, *absent prejudice to the soldier or sailor,* there is no justification or requirement for a stay of legal proceedings." (Original italics.)

Again, in *Johnson* v. *Johnson* (1943) 59 Cal.App.2d 375, 383 [139 P.2d 33], in interpreting section 521, the California court states: "It is quite apparent that Congress has determined that it is not necessary in order to protect the rights of those in military service to grant to them the absolute right to a stay. *The Congress determined that, in considering the rights of all concerned, they could all be best protected, including the rights of those in the service, by vesting a wide discretionary power in the trial courts of the nation. It was believed that the rights of those in service would be adequately protected by the trial judges, who, in each case, could determine whether the service man's rights would be adversely affected by the fact of his service.* The Congress also determined that the rights of civilian litigants must also be considered. It is a harsh thing to tell a litigant that he must wait to enforce his cause of action until after the war. Witnesses or parties may die, and witnesses may disappear or forget the facts. However, in the national interest, wherever the rights of one in the military service will be adversely affected unless a stay is given, the court must grant a stay. That is one price civilians must pay in aiding the war effort. In any case, however, the trial judge is called upon to determine, in that particular case, which interest is of the greatest importance. Doubtful cases should be resolved in favor of the service

man." (Italics added; see also, *Boone* v. *Lightner* (1943) 319 U.S. 561 [87 L.Ed. 1587, 63 S.Ct. 1223]; *Halstead* v. *Halstead* (1946) 72 Cal.App.2d 832, 834-835 [165 P.2d 513].)

Moreover, there is another line of cases which seem to support the view that section 525 is not mandatory and its application is left to the sound discretion of the trial court. (See, e.g., *Bailey* v. *Barranca* (1971) 83 N.M. 90 [488 P.2d 725, 728-730]; *King* v. *Zagorski* (Fla. 1968) 207 So.2d 61; *Rebar* v. *Rebar* (1949) 165 Pa.Super. 341 [67 A.2d 598]; *Smith* v. *Fitch* (1946) 25 Wn.2d 619 [171 P.2d 682].

We hold that the clear and unambiguous language of section 525 controls, and is mandatory as it applies to the petitioner. It tolls the 100-day claim limitation and petitioner's claim against respondent is not barred. The trial court erred in its rulings.

█ An additional ground for reversal of the order denying relief is abuse of discretion on the part of the trial court. Statutes such as Government Code section 946.6 are designed to prevent the claim statutes from serving as a trap for laymen, unlearned in the law, ignorant of the claim requirement and, as here, unaware of the existence of a tenable cause of action. The undisputed facts of this case establish mistake and excusable neglect beyond any doubt. The County of Sacramento had an opportunity to show prejudice in counterweight to the petitioner's showing of mistake and excusable neglect. (Gov. Code, § 946, subd.(c).) The county did not do so. Under these circumstances the trial court abused its discretion in denying the application.

The order and judgment of dismissal is reversed.

Puglia, P. J., and Friedman, J., concurred.