[Civ. No. 25150. Fourth Dist., Div. Two. Dec. 21, 1982.]

KENNETH DRAPER NELSON, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Miller, Boyko & Bell, Terry D. Harper and Robert K. Schraner for Plaintiff and Appellant.

George Deukmejian, Attorney General, Willard Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, and Randall B. Christison, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

McDANIEL, J.—Kenneth Draper Nelson (plaintiff) appeals from the order and judgment dismissing defendants Harvey E. Billig, M.D., Paul Cress, M.D., Terrill R. Holland, Ph.D, Lindberg Hale, and 30 fictitious Doe defendants, and from the judgment following the order which sustained the State of California's demurrer to plaintiff's first amended complaint. The questions on appeal are: (1) when does the time run for service on defendants originally named as Does but whose true names are later added by amendment; and (2) was plaintiff's first amended complaint fatally inconsistent with either his original complaint or his tort claim filed against the State?

## FACTS

Plaintiff was incarcerated in the San Diego County jail. He was then transferred to the California Institute for Men in Chino. While in Chino, he complained of various medical problems including weight loss, thirst, and leg pain. He was examined and treated by the individual defendants. He ultimately became diabetic, and suffered injury to his leg which necessitated the use of a leg brace.

After undertaking to comply with the applicable Government Code claims statutes,[1] plaintiff on *July 20, 1976,* filed a complaint explicitly based on medical malpractice against the State of California (State), the Department of Corrections, "John Doe Bills, M.D.," the Regents of the University of California, and 30 Doe defendants. He then filed a separate action against the County of San Diego, "John Doe Frank, M.D.," and 30 Doe defendants. This action was also based on medical malpractice.

The two cases were consolidated. On *October 21, 1977,* the complaints were amended to substitute Harvey E. Billig, Jr., M.D., for "John Doe Bills, M.D.," and Jules A. Frank, M.D. for "John Doe Frank, M.D." On March 2, 1978, Paul Cress, M.D., Terrill R. Holland, Ph.D., and Lindberg Hale were substituted by amendment for Does I-III.

Dr. Frank was served with summons on August 4, 1980, and Dr. Billig was served on August 5, 1980.

The State moved for judgment on the pleadings on the ground that the complaint did not allege facts sufficient to constitute a cause of action against it, and Dr. Frank moved to dismiss as to himself and Does I-XXX under Code of Civil Procedure section 581a. Dr. Billig also moved to dismiss and to quash service of summons under Code of Civil Procedure section 581a.

The court granted the motions to dismiss, and dismissed the individual named and Doe defendants for failure to return summons within three years from the filing of the complaint. The State's motion for judgment on the pleadings was granted with leave to amend. Plaintiff then filed a first amended complaint on an entirely different theory.

Whereas the original complaint was specifically directed at alleged medical malpractice, the first amended complaint alleged that plaintiff had informed the defendant employees of his arthritic and hypoglycemic conditions, that defendants "were not sufficiently well versed and/or knowledgeable concerning

---

[1]A copy of plaintiff's claim as presented to the State Board of Control is attached as an appendix.

diabetes to themselves render the immediate medical care reasonable and necessary under the circumstances," and that "by reason thereof said employees . . . owed a duty to plaintiff to summon immediate and competent medical attention." Plaintiff then went on to allege that defendants breached their duty by failing to summon the necessary medical assistance, all of which proximately caused the injuries and damages arising therefrom of which he complained.

Because this represented a radical departure from the theory of the original complaint and because no claim reflecting such and the facts upon which it was based had ever been presented, the State demurred. The demurrer was sustained, judgment for the State was entered, and this appeal followed.

DISCUSSION

I

■ With reference to the individual defendants, plaintiff contends that the three-year time limit of section 581a should run from the filing of the amended complaint, and cites *Taliaferro* v. *Riddle* (1959) 167 Cal.App.2d 567 [334 P.2d 950] for this proposition.

In *Taliaferro,* the defendants were dismissed pursuant to section 581a, plaintiff having failed to serve them within the three-year period. They were later ordered joined as necessary parties, and were named as defendants in the amended complaint. As such, they came in as new parties and the action commenced anew as to them.

*Taliaferro* is not controlling here. *Taliaferro* applies to cases in which defendants are dismissed and then brought in as new, necessary parties. The defendants here were not ordered joined as necessary parties, nor does plaintiff cite authority for the proposition that they are necessary parties. In this case, the named defendants who were substituted in were not new parties, and the time for the purposes of section 581a began to run when the original complaint was filed. (*Dresser* v. *Superior Court* (1964) 231 Cal.App.2d 68, 77 [41 Cal. Rptr. 473].)

■ Plaintiff next contends that he should be excused for failure to comply with section 581a. Even though a plaintiff claims he or she should be excused for failure of timely service, the trial court must dismiss unless the plaintiff makes an adequate showing of diligence or excuse for delay. (*Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 723, fn. 7 [170 Cal.Rptr. 790, 621 P.2d 829].) Only after plaintiff has met this burden must the court consider whether

or not the prejudice to the defendant outweighs the harm to the plaintiff if the action is not dismissed. (*Id.*, at p. 724.)

In the case here, plaintiff did not make an adequate showing of diligence or excuse for delay. It is clear that he knew the names of Billig, Frank, Cress, Holland, and Hale by March 2, 1978. He also had ample time to propound interrogatories to discover the names of any other Doe defendant. Nonetheless, he failed to serve the defendants within the three-year period.

He attempts to excuse this failure by saying that he overlooked the lack of service on the individual defendants for two reasons. First, he failed to notice that the answer filed by the State did not answer for the individual defendants, and assumed that it did because he claims it was the duty of the Attorney General to represent the individual defendants. Failure to read an answer carefully is neither diligence nor excuse for delay.

Secondly, he claims to have been misled by an at-issue memorandum filed by the County of San Diego which stated that all essential parties had been served. He urges that this memorandum induced him to overlook errors in service. This contention was apparently not raised below; in any event, estoppel arises from the declarations or conduct of the party estopped (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423]), and here the at-issue memorandum was filed by the county, not by the State or the individual defendants. In addition, reliance must be reasonable (*Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431, 439-440 [96 Cal.Rptr. 571, 487 P.2d 1211]). It was plaintiff's duty to see that the individual defendants were served. It was not the duty of the Attorney General; it was not the duty of the County of San Diego. Plaintiff did not even attempt to serve three of the named defendants; to believe that they had been served because of an at-issue memorandum filed by another defendant is not reasonable.

Because no showing of diligence or excuse for delay was made, the trial court was required to dismiss the action, and the question of prejudice to the defendants never arose. The order granting the individual defendants' motions to dismiss will therefore be affirmed.

## II

Turning now to plaintiff's appeal from the judgment of dismissal as to the State, both the original complaint and the claim filed with the State Board of Control as a predicate therefor alleged that the State and its doctors were negligent in their examination, diagnosis, and treatment of plaintiff.

The State moved for judgment on the pleadings on the ground that the complaint failed to allege facts sufficient to constitute a cause of action, because, under Government Code section 844.6, the State could not be liable for a prisoner's injury. The motion was granted with leave to amend, and plaintiff filed an amended complaint alleging that employees of the State negligently failed to summon immediate, competent medical care. The State demurred, and the demurrer was sustained without leave to amend.

Government Code section 844.6 provides that a public entity is immune from liability for injuries to prisoners, except that it must pay judgments based on malpractice against public employees who are lawfully engaged in the practice of one of the healing arts.

Another exception to a public entity's immunity from liability for injuries to prisoners is set out in Government Code section 845.6, which states: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6."

The original complaint's theory was medical malpractice. It did not state a cause of action against the State, because the State could not be held directly liable for medical malpractice. The State could have been required to pay any judgment against its employees for medical malpractice, but here the employees had been dismissed.

The amended complaint, based on the failure to summon immediate, competent medical care, subject to the infirmity hereafter noted, *did* state a cause of action against the State under Government Code section 845.6. That section places a limited duty on public entities "to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care." (Gov. Code, § 845.6, Law Revision Com. comment, 1963 addition.) Of course, plaintiff's use of the word "competent" can add nothing to this statutory duty; "[t]he standards of medical care to be provided to prisoners involve basic governmental policy that should not be subject to review in tort suits for damages." (Gov. Code, § 845.6, Law Revision

Com. comment, 1963 addition.) The demurrer could not have been sustained, therefore, on the ground that the amended complaint as such failed to state a cause of action against the State.

■ However, the State urges that an amended complaint may be compared with the original complaint to determine whether the new pleading, by reason of unexplained omissions, is untruthful or sham. This is the rule. (*Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377].) However, such rule does not apply in this case. The State contends that the amended complaint is "destroyed" because plaintiff originally alleged that he received negligent medical care and then omitted reference to the medical care. This contention is incorrect. The amended complaint alleges failure to summon immediate, competent medical attention. Failure to summon immediate, competent medical care is not incompatible with the allegation in the original complaint, because it is possible that medical attention can be summoned belatedly, and once summoned, be negligent.

■ However, the judgment as to the State must be upheld for another reason. If a plaintiff relies on more than one theory of recovery against the State, each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. (*Lopez* v. *Southern Cal. Permanente Medical Group* (1981) 115 Cal.App.3d 673, 676-677 [171 Cal.Rptr. 527]; *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 82-83 [128 Cal.Rptr. 454]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 752-753 [84 Cal.Rptr. 257].)

In *Lopez,* the appellants filed a claim in which they alleged that the State had negligently issued a driver's license to the epileptic driver who struck their car. The claim was denied and they filed a complaint, alleging that the State had negligently issued the driver's license despite its knowledge of the driver's epilepsy. Two and one-half years later, when it was discovered that the State had not been aware of the epilepsy, appellants attempted to amend their complaint to allege that the State had known that the driver had failed to comply with accident reporting and financial responsibility provisions of the Vehicle Code, but had nevertheless failed to revoke or suspend his license. The State argued that the attempted amendment was improper because the cause of action in the amended complaint was not mentioned in the claim. The trial court therefore dismissed the State, and the Court of Appeal affirmed.

In *Shelton,* a husband and wife sought to amend their joint personal injury complaint to allege damages for loss of consortium. Each had filed a claim with

the State, but the claims were silent as to any injury or damages suffered by reason of injury to the other. They argued that the claims filed, which listed physical injury and emotional distress (see *Shelton* v. *Superior Court, supra,* 56 Cal.App.3d 66,70, fn. 1), generally put the public entity on notice and satisfied the claims statute. The court pointed out that " 'It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither susbstantial compliance nor basis for estoppel. [Citations.]' (12 Cal.3d at p. 455.) It is obvious that the state had no notice that any claim for loss of consortium was involved until its attorney received a telephone call more than one year after the accident." (*Shelton* v. *Superior Court, supra,* 56 Cal.App.3d 66, 82.)

In *Connelly,* the appellant filed a claim for damages with the State Board of Control which alleged that state representatives had negligently provided him with inaccurate information about the anticipated rise in a river. The claim was denied, and he brought suit, alleging negligence in dissemination of inaccurate river height forecasts and negligent release of water from state-operated dams. The State's demurrer to each cause of action was sustained. On appeal, the court concluded that the demurrer was properly sustained as to the causes of action which were based on negligent operation of the dams, because appellant's claim did not mention such negligent operation.

In the case here, as in the cases cited above, the facts set forth in plaintiff's claim clearly do not correspond with the facts alleged in the amended complaint. The claim indicates that at the time plaintiff was transferred to Chino, he saw medical personnel, told them of his illness, and that they discounted his statements after taking X-rays and checking his blood pressure. The claim was presented against the State, the Department of Corrections, and against the employees of the department "who examined, treated and had custody of claimant. . . ." The claim does not recite that his injury was the result of a failure on the part of any employee to summon immediate and competent medical care, but was the "result of the failure of the Department of Corrections to diagnose and treat or allow claimant to maintain his ongoing medications."

Plaintiff's claim could be said to state facts sufficient to support the amended complaint *only* if we hold, as a matter of statutory interpretation, that the act of a doctor or other such professional who, in the course of treatment of a prisoner, fails to prescribe and/or provide the correct medication is the legal

equivalent to a failure to summon medical care as set forth in section 845.6 of the Government Code.

Addressing that issue, we hold that the two are *not* equivalent. Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession. Failure to do so is malpractice. (*Burns* v. *American Casualty Co.,* 127 Cal.App.2d 198, 203.) Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is a breach of such duty and as such is also medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care.

Based upon this analysis and particularly our legal interpretation of the statute noted, we hold further that plaintiff's claim, as a matter of law, failed to recite the requisite facts to support the theory and the allegations of the first amended complaint. The State's demurrer thereto was accordingly rightly sustained.

### DISPOSITION

The order and judgment appealed from are affirmed.

Morris, P. J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 23, 1983. Bird, C. J., was of the opinion that the petition should be granted.

APPENDIX

December 11, 1975

State Board of Control
926 "J" Street
Suite 300
Sacramento, California 95814

CLAIM AGAINST THE STATE OF CALIFORNIA,
DEPARTMENT OF CORRECTIONS.

1. The claimant's name is KENNETH DRAVER NELSON, Booking number 751894, San Diego County Jail, 222 West "C" Street, San Diego, California 92101.

2. Please direct all notices to the Law Offices of HARPER & LETHER, Suite 1321, Security Pacific Plaza, 1200 Third Avenue, San Diego, California 92101.

3. On or about June 25, 1975, while under the custody and control of the Department of Corrections of the State of California, claimant was transported to the state correctional facility at Chino, California. At said time and place claimant advised medical personnel in the employ of the State of California that he was suffering from arthritic and hyperglycemic conditions and was required to ingest medication for the purpose of controlling the number of triglycerides in his blood. A physician employee of the State Department of Corrections, a Dr. Bills, discounted claimant's position regarding his afflictions on the grounds that X-rays failed to indicate any sign of arthritis and that claimant could not be suffering from a hyperglycemic or triglyceride problem since his blood pressure was "normal." During the period from June 25, 1975, to September 17, 1975, claimant suffered a weight loss of 59 pounds. On approximately August 15, 1975, claimant began experiencing discomfort in his left leg and foot. At the present time claimant has been diagnosed as having suffered nerve root damage in said leg and foot and has been compelled, since approximately November 14, 1975, to wear a leg brace in order to prevent his left foot from dragging as he walked. As a result of the failure of the Department of Corrections to diagnose and treat or allow claimant to maintain his ongoing medications, claimant has become diabetic and has suffered permanent nerve root damage to his left leg and foot.

4. This claim is presented against the State of California, Department of Corrections, its employees, a Dr. Bills and a Dr. Frank, and all other employees, servants and agents of said Department of Corrections who examined, treated and had custody of claimant since June 25, 1975.

5. By way of his claim herein, claimant asserts that he has suffered permanent and irreparable injuries to his person in that he is now, and will for the rest of his life, suffer from a diabetic condition and will be precluded from returning to his former occupation as a contractor and construction worker because of the debilitating injury to his left leg and foot. As a result of these injuries claimant has been damaged in the sum of $100,000.00. Said sum is hereby claimed by KENNETH DRAVER NELSON, claimant herein, as recompense.

HARPER & LETHER

by
John P. Lether
Attorneys for Claimant