[No. B001666. Second Dist., Div. Seven. June 25, 1984.]

RUBY GROSS MOORE, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Harney & Moore, George E. Moore, David M. Harney, Greines, Martin, Stein & Richland and Alan G. Martin for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Vera Fisch, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**JOHNSON, J.**—Ruby Gross Moore appeals from the denial of her petition, under Government Code section 946.6,[1] for relief from the requirements of section 945.4, which makes presentation of a claim a prerequisite to suit against, in this case, the State of California (the state). The circumstances of this case are unusual if not unprecedented: Ms. Moore filed a *timely* claim for damages for her injuries but was required to follow the Govern-

---

[1]Statutory citations hereinafter by section number are to the Government Code.

ment Code's procedures for *late* claims after the lawsuit based upon her timely, rejected claim was dismissed on the grounds that that claim did not sufficiently embrace the cause of action pled. We have concluded that, given the showing of reasonable mistake below and the state's failure there even to attempt to demonstrate prejudice, Ms. Moore should have been allowed the relief she sought, and we therefore reverse.

## I. FACTS AND PROCEEDINGS BELOW

 The instant proceeding involves Ms. Moore's efforts to proceed on the merits of a cause of action against the state for negligence in treatment of injuries Ms. Moore suffered while confined at Metropolitan State Hospital. On May 9, 1981, Ms. Moore was assaulted by another patient at that hospital and sustained a fractured jaw. Within 100 days of this occurrence and of attendant treatment for the injury, she filed, through her counsel, a claim with the State Board of Control.[2] The claim alleged substantial injuries and damages resulting from negligence by employees of the state; its full text is set out in the margin.[3]

---

[2] Under section 911.2, "[a] claim relating to a cause of action . . . for injury to person . . . shall be presented . . . not later than the 100th day after the accrual of the cause of action. . . ."

[3] "July 29, 1981

"State Board of Control
926 'J' Street, #300
Sacramento, CA

"Hospital Administrator
Metropolitan State Hospital
11400 Norwalk Boulevard
Norwalk, CA 90650

 "Re:Claim of Ruby Gross Moore
 Date of Birth: January 8, 1918

"Dear Sirs:

 "Pursuant to Government Code § 911.2, this claim is being submitted in compliance with Government Code § 910.
 "The name and address of the claimant is Ruby Gross Moore, 508 Rindge Lane, Redondo Beach, CA 90278. Communication or information regarding this claim should be addressed or telephoned to George E. Moore, Law Offices of Harney and Moore, 650 South Grand Avenue, #1200, Los Angeles, CA 90017.
 "The date, place and other circumstances of the occurrence which gave rise to the claim asserted are the following: the occurrence happened on May 9, 1981 at approximately 8:00 p.m. in Unit 408 (women's dormitory) of the Metropolitan State Hospital in Norwalk. At that time, Ruby Moore was assaulted by a female assailant. As a result of that battery, Ruby Moore sustained a fractured left jaw which has left serious, permanent residual damages. The female assailant was known to have dangerous propensities and was not otherwise restrained. The names of your negligent employees are unknown.
 "The amount claimed as of the date of the presentation of this claim is $750,000.
 "Very truly yours,
 "HARNEY AND MOORE
 "By /s/ GEORGE E. MOORE

"/s/ RUBY GROSS MOORE"

While this claim was under consideration by the Board of Control, Ms. Moore was examined by an oral surgeon at the instance of counsel. On September 14, 1981, the physician reported in writing that Ms. Moore's serious complaints, including inability to chew any solid foods, misaligned facial appearance, and numbness of the lower jaw, cheeks, and nose, were attributable to insufficient and improper treatment of the May 9, 1981 fracture. (According to Ms. Moore's account to the physician, her treatment had been limited to little more than an X-ray taken a full week after she was assaulted.) On September 15, 1981, counsel received this report, and this was when he and his client first discovered that medical negligence specifically was implicated. On the same day, the Board of Control summarily denied Ms. Moore's claim. However, notice of that denial, including the statutorily prescribed warning that suit must be filed within six months (see § 913), was not mailed until December 3, 1981.

Ms. Moore and her counsel proceeded to file a superior court action against the state for "medical negligence." The complaint was served upon the Attorney General in May of 1982, and the state responded with a demurrer, which was set for hearing on September 7, 1982. The grounds of the demurrer were that Ms. Moore's timely claim against the state did not sufficiently support or coincide with the cause of action pleaded. (Compare *Nelson* v. *State of California* (1982) 139 Cal.App.3d 72 [188 Cal.Rptr. 479] and cases discussed therein.) After the filing of opposition asserting a number of colorable grounds in support of the claim and the complaint, the demurrer was heard and was sustained, with leave to amend.

Having thus suffered an adjudication that her previous claim was not a sufficient predicate to the cause of action she sought to assert, Ms. Moore immediately—i.e., on September 10, 1982, three days after the ruling on the demurrer—filed with the Board of Control an application for leave to present a late claim under section 911.4. The board failed to act upon this application within 45 days of its filing, and the application was accordingly deemed denied (§ 911.6, subd. (c)). In the interim, the state's demurrer to Ms. Moore's amended complaint was sustained without leave to amend.

Ms. Moore then commenced the present proceeding by filing a petition under section 946.6. This section provides in relevant part that where an application to present a late claim has been denied pursuant to section 911.6 the court shall relieve the claimant of the necessity to file a claim as prerequisite to suit, upon a petition demonstrating the application was made within a reasonable time not in excess of one year from the accrual of the cause of action and "[t]he failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes that it would be prejudiced if the court relieves the petitioner . . . ."

(§ 946.6, subd. (c)(1).) The petition was supported by exhibits and a declaration of Ms. Moore's counsel. In opposition, the state filed a brief memorandum of points and authorities which disputed that Ms. Moore's failure had been "through mistake, etc." but did not assert that the state would be prejudiced by the granting of relief. The petition was heard by the same judge who had heard and sustained the demurrers to the former pleadings, and was denied.

## II. DISCUSSION

As noted above, there are two elements a petitioner must establish under section 946.6. First, he must show that an application for leave to present a late claim was filed within a reasonable time not to exceed one year from accrual of the cause of action upon which suit is sought to be brought. Second, the petitioner must establish one of several alternative excuses for the failure to present a timely claim in the first instance; these include minority or mental or physical incapacitation during all of the time specified by section 911.2 for presentation of the claim (subds. (c)(2), (c)(3)); that the person who sustained the injury or loss sought to be redressed died before expiration of the time for claim presentation (subd. (c)(4)); or, as asserted in the present case, that the failure to present the claim was through mistake, inadvertence, surprise or excusable neglect (subd. (c)(1)). If the petition is grounded upon the latter type of excuse and the petitioner establishes it, the statute provides the further qualification that relief shall be granted unless the public entity establishes that it would be prejudiced thereby. (*Id.*) We proceed to consider these requisites of section 946.6, subdivision (c)(1) as implicated in the present case.

### A. *The Failure Timely to File a Second Claim and the Correlative Reliance on the Initial Claim Arose From an Excusable Mistake of Law.*

In reviewing the trial court's denial of the relief provided for by section 946.6, we are both bound and guided by the Supreme Court's repeated expressions that the statute is to be liberally applied and that particularly close appellate scrutiny should be given to such a denial of relief. The governing rules were most recently restated in *Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435 [197 Cal.Rptr. 601, 673 P.2d 271], as follows: "Section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary claimant. [Citation.] The remedial policies underlying the statute are 'that wherever possible cases be heard on their merits, and any doubts which may exist should be resolved in favor of the application.' [Citation.] Thus, '[a]n appellate court will be more rigorous in examining the denial of relief than its allowance.' [Citation.]" (Accord, *County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d

545, 552 [94 Cal.Rptr. 158, 483 P.2d 774]; *Viles* v. *State of California* (1967) 66 Cal.2d 24, 28-29, 31 [56 Cal.Rptr. 666, 423 P.2d 818].)

 In applying these rules here, we observe also that the instant case presents particular factual circumstances counseling in favor of allowing Ms. Moore to proceed and against penalizing her by loss of her cause of action. First, Ms. Moore herself is relatively, if indeed not entirely, free of blame: notwithstanding her status as a 63-year-old recent mental patient, she timely retained counsel to pursue her claim and placed the matter in his hands. She thus falls within the class of persons who, "as in previous cases granting relief on the basis of excusable neglect, . . . acted diligently to retain legal counsel within the 100-day limitation period." (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 437.) Second, and correlatively, to deny Ms. Moore relief on account of conduct attributable not to her but to her counsel would leave her with the sole remedy of a malpractice claim against that counsel, "[t]he adequacy of [which] remedy . . . has been questioned by a number of commentators, and for good reason." (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 906 [187 Cal.Rptr. 592, 654 P.2d 775] (Bird, C. J., dis.).) Third and most significantly, this case is unique among those applying section 946.6 in that counsel himself did file a claim against the state well within 100 days of his client's injury. Counsel's own posture thus is distinctly superior to that of counsel in previous cases who failed entirely to invoke the claims procedure timely—and of course in many of *those* cases relief from *that* dereliction was afforded upon appellate review. (See, e.g., cases collected and discussed in *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 536-537 [148 Cal.Rptr. 729].)

Quite distinguishable from the foregoing cases or indeed any prior case of which we are aware, the "mistake, inadvertence, surprise or excusable neglect" of counsel at issue in this proceeding involved not failure to invoke the claims procedure at all but rather failure to discern, or to anticipate the trial court's holding, that a claim actually presented and acted upon by the state was not drafted with sufficient specificity to support or embrace a cause of action for the claimant's injuries based upon medical negligence. 
 Counsel's error is thus properly analyzed as a mistake of law, i.e., a mistake occurring "when a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts." (*Baratti* v. *Baratti* (1952) 109 Cal.App.2d 917, 921 [242 P.2d 22].) Under section 946.6, determination of the appropriateness of relief from a failure occasioned by a mistake of law involves application of the same standards as applied under Code of Civil Procedure section 473, namely "that not every mistake of law is excusable [citations] but that an *honest* mistake is excusable, the determining factor being the *reasonableness* of the miscon-

ception [citations]." (*Viles* v. *State of California, supra,* 66 Cal.2d at p. 29 (italics added).)

■ Applying these principles as well as the standards of liberality noted above to the peculiar facts of this case, we conclude that counsel's initial reliance upon the completed claim as the predicate for the medical negligence lawsuit cannot be condemned as unreasonable. Counsel filed a claim on behalf of Ms. Moore which specified that she had suffered "serious, permanent residual damages" flowing from her injury at the state hospital, and in which the nature of the state's responsibility was broadly couched as arising from negligence by certain employees whose identities were unknown. Notwithstanding this broad recital of the state's actionable conduct, the state did not respond to the claim with a notice of insufficiency under section 910.8.[4] This inaction bolstered the viability of the claim by reason of section 911, which provides in relevant part that "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided in section 910.8 . . . ." Thereafter the state issued a flat rejection of the claim, with the standard notice that any suit based upon the claim had to be brought within six months (see § 913). Taken together, these circumstances could properly inspire a reasonable apprehension that the claims-presentation process had been satisfied and that the time was ripe for commencement of an action to litigate responsibility for the state's negligence, including the medical negligence charged in the complaint that soon was filed.

■ The state contends, however, that counsel's decision so to proceed—rather than, presumably, filing an amended or a second complaint—should be deemed inexcusable under that principle that "[i]gnorance of the law, at least where coupled with negligence in failing to look it up, . . . will certainly sustain a finding denying relief." (*Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441, 445 [256 P.2d 366].) But we fail to discern the applicability of this rule to the facts at bench. Counsel was certainly not "ignorant" of the claims procedure as such—he pursued it. And had he "looked up" the decisions in which a claim had been held insufficient to ground a particular cause of action, he would have found a series of disparate cases, many if not all of which could well be contended to be significantly different and distinguishable from Mrs. Moore's. Thus, in *Lopez* v. *Southern Cal. Permanente Medical Group* (1981) 115

---

[4]This section provides that "[i]f in the opinion of the board or the person designated by it a claim fails to comply substantially with the requirements of Sections 910 and 910.2 [prescribing the contents of claims] . . . the board or such person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . ."

Cal.App.3d 673 [171 Cal.Rptr. 527], plaintiffs were barred from amending their complaint, two and one-half years after filing suit, to allege a dereliction by the state entirely different from that set forth in the claim and the original complaint. In *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66 [128 Cal.Rptr. 454], leave to amend was held properly denied where a husband and wife had filed claims and then a lawsuit for personal injuries arising from an auto accident but thereafter sought to add to the lawsuit claims for loss of consortium, which were entirely different causes of action involving additional elements of damages. *Nelson* v. *State of California* (1982) 139 Cal.App.3d 72 [188 Cal.Rptr. 479]—which might also have been "looked up" but was not officially reported until the week that Ms. Moore's complaint was filed (and was not then final)—involved a strict holding that a detailed claim for medical malpractice could not be used to ground a cause of action for failure to summon medical care under section 845.6. Finally, the earliest of this line of cases contains a one-paragraph holding that since "[a]ppellant's claim presented to the State Board of Control alleged that his damages resulted from erroneous information regarding the anticipated rise in the level of the Sacramento River [but][n]o mention [was] made of negligence in the operation of [state-operated] dams," a cause of action for the latter negligent act was demurrable. (*Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 753 [84 Cal.Rptr. 257].) While this case bears more similarity to Ms. Moore's than the preceding three, like the others *Connelly* apparently involved a claimant undone by too narrowly specific assertions in his claim, whereas here counsel could have concluded that his broadly stated and administratively unchallenged claim could be held distinguishably sufficient to ground the medical negligence pleading.[5]

The foregoing analysis is not, of course, meant to essay or establish that the trial court erred in sustaining the demurrer to Ms. Moore's complaint on the ground that it was insufficiently embraced within the claim her counsel filed. It does however demonstrate that the sufficiency of that claim and complaint involved a debatable issue, and hence counsel's mistake of law in relying upon the original claim rather than filing another was reasonable

---

[5]Moreover, we note that counsel's hypothetical research would have disclosed, in addition to the foregoing court of appeal decisions, Supreme Court decisions in the analogous area of amendment of pleadings to relate back and avoid the bar of the statute of limitations applying a decidedly more liberal test. For example, in *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825], the court allowed a complaint alleging that police officers had intentionally and wrongfully shot and killed plaintiff's decedent to be amended by addition of a second cause of action alleging the defendant city had been negligent in continuing to employ the officers with knowledge of their dangerous and violent propensities. Interestingly, the opinion in *Grudt* does not recount the content of the claim against the city that the plaintiff there must have filed as a precondition to maintaining both of her causes of action.

and excusable. (See *City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 345-346 [85 Cal.Rptr. 149, 466 P.2d 693].) Analogously, in the companion cases of *Roehl* v. *The Texas Co.* (1930) 107 Cal.App. 691 [291 P. 255] and *Roehl* v. *The Texas Co.* (1930) 107 Cal.App. 708 [291 P. 262], the court of appeal first affirmed an order denying a motion to quash service of process, but then proceeded to reverse a denial of relief from the default judgment that had been entered for failure to respond to the properly—but arguably improperly—served complaint. The court stated, in language well apposite here: "In the instant case it is quite true that we have this day sustained the action of the trial court in refusing to quash service of the summons. The question, however, as to the validity of such service was at least a sufficiently doubtful one so that appellant's attorney might very reasonably have entertained the opinion that the service would be quashed. The determination of that question by the trial court involved the decision of questions both of fact and of law. If a mistake of law is a reasonable one under the facts as they are made to appear, the neglect to file an answer because of the belief entertained, is at least excusable." (*Id.*, at p. 714.)

B. *Ms. Moore's Application for Leave to File a Late Claim Was Clearly Made Within a "Reasonable Time" as Required by Section 946.6, Subdivision (c).*

Having determined that the failure timely to file an amended or a second claim elaborating upon the cause of action for medical negligence was the result of an excusable mistake of law as to the adequacy of the claim that had been acted upon, we have no difficulty in concluding that Ms. Moore's application for leave to present the further claim as a late claim "was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4," as required by section 946.6, subdivision (c). The period so specified by section 911.4, subdivision (b) is one year after accrual of the cause of action. █ Here, the state concedes that, in light of the rule that a cause of action for medical negligence accrues upon discovery of the injury and its negligent cause (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588]) and the uncontradicted evidence that the medically negligent cause of Ms. Moore's injuries was discovered upon receipt of the physician's report on September 15, 1981, the instant cause of action accrued on that date. Mrs. Moore's application under section 911.4 was dispatched on September 10, 1982, distinctly if only slightly less than one year after accrual.

Nonetheless, the state contends that this period of nearly one year must be deemed unreasonable as a matter of law. To the contrary, counsel's and Ms. Moore's action of September 10, 1982, was reasonable as a matter of law, for it occurred only three days after the state's initial demurrer to the

complaint had been sustained on the grounds that the claim was insufficient to support it. Only then was Ms. Moore's honestly held and earnestly argued legal position determined actually to have been mistaken, and until then there implicitly was no basis for Ms. Moore or her counsel to seek to file a further claim. "Where, as here, plaintiff's mistake was the actual cause of his failure to comply . . . his application to the board could obviously not have been made until he discovered his mistake, and the delay was, therefore, reasonable under the circumstances." (*Viles* v. *State of California, supra,* 66 Cal.2d at p. 32; accord, *Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 440.)

C. *The State's Failure to Present Any Allegation or Proof of Prejudice Requires That Plaintiff Be Granted Relief.*

■ We have determined above that Ms. Moore's late-claim application was filed within a reasonable time not exceeding one year from the accrual of her cause of action, and that failure to file a second or amended claim within the normal time limits was the result of an excusable mistake. Section 946.6, subdivision (c)(1) provides that in these circumstances the court "shall" grant relief "unless the public entity establishes that it would be prejudiced" by such action. In the proceedings below the state offered no evidence or argument whatsoever that it would be so prejudiced. Absent any such allegation or offer of proof of impending prejudice, Ms. Moore's petition must be granted, under the very terms of the statute. (*Syzemore* v. *County of Sacramento* (1976) 55 Cal.App.3d 517, 524 [127 Cal.Rptr. 741]; *Flores* v. *Board of Supervisors* (1970) 13 Cal.App.3d 480, 485 [91 Cal.Rptr. 717, 55 A.L.R.3d 925]; *Segal* v. *Southern California Rapid Transit Dist.* (1970) 12 Cal.App.3d 509, 512 [90 Cal.Rptr. 720]; see *Nilsson* v. *City of Los Angeles* (1967) 249 Cal.App.2d 976, 979-980, 982 [58 Cal.Rptr. 20].)

■ In opposition to this conclusion, the state relies upon a number of decisions, affirming denials of relief under section 946.6, which recite that the public entity in question had no burden of proving prejudice "until [the claimant] satisfied the trial court that [his or her] failure to file a timely claim was due to mistake, inadvertence, surprise or excusable neglect." (*Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152, 159 [188 Cal.Rptr. 644]; *Rivera* v. *City of Carson* (1981) 117 Cal.App.3d 718, 726 [173 Cal.Rptr. 4]; *Hasty* v. *County of Los Angeles* (1976) 61 Cal.App.3d 623, 627 [131 Cal.Rptr. 347]; *Black* v. *County of Los Angeles* (1970) 12 Cal.App.3d 670, 677-678 [91 Cal.Rptr. 104]; accord, *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 478 [58 Cal.Rptr. 249, 426 P.2d 753].) The expressions of the courts in these cases are indeed uniform. However, the quoted statements not only were dicta—the court in each case having

already held that the plaintiff had failed to establish the prerequisites that it was his burden to show—but more importantly they merely restated the order and burdens of proof prescribed by the statute.

It is true that in order to prevail in a proceeding under section 946.6, subdivision (c)(1) the public entity need not carry its burden of proof of prejudice unless and until the plaintiff's burden of showing the initial preconditions of reasonable timeliness and mistake, etc. has been met. But this does not mean that a public entity that offers no claim or evidence of prejudice before or at the time of the hearing on the petition should automatically be allowed a "second shot" on the issue of prejudice (actually a first one) upon reversal of a determination adverse to the plaintiff. If this were allowed, the result would be repeated, piecemeal litigation of petitions designed to expedite proceedings for the benefit of both parties, and, in some cases, successive, fragmentary appeals from repeated adverse decisions by trial courts. This prospect is inconsonant with both the policies of section 946.6 and the statute's provision for a unitary determination of the issues. (See § 946, subd. (e) ("The court shall make an independent determination upon the petition. The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition.").) The cases cited by the state cannot reasonably be read to prescribe or authorize such a convoluted procedure where the public entity has made no effort to establish prejudice in the first instance.[6]

We conclude, therefore, that since Ms. Moore's petition was sufficient to satisfy the preconditions for relief under section 946.6 and the state made no effort whatsoever to assert or establish prejudice below, Ms. Moore is now entitled to relief under the terms of section 946.6, subdivision (c)(1).

---

[6]In its most recent decision applying section 946.6, the Supreme Court, upon reversing a decision adverse to the plaintiff on the issue of excusable neglect, remanded the case "for a determination of whether respondent would be prejudiced by granting relief in this case." (*Ebersol* v. *Cowan, supra,* 35 Cal.3d at p. 430.) In that case the trial court had specifically grounded its determination upon plaintiff's failure of proof and therefore had had no occasion to consider the question of prejudice. (*Id.,* at pp. 430, 434.) By contrast, in *Nilsson* v. *City of Los Angeles, supra,* 249 Cal.App.2d 976, the public entity had made no effort to assert or establish prejudice below—just as here. (*Id.,* at pp. 978-979.) The Court of Appeal accordingly concluded that the trial court's denial of relief could only have been based upon a determination that the claimant had not established the elements it was her burden to show. (*Id.,* at p. 979.) Reaching a contrary conclusion, and stressing the absence of any demonstration of prejudice below (see *id.,* at pp. 980, 982), the Court of Appeal held the trial court's denial of the petition an abuse of discretion and reversed it flatly. (*Id.,* at p. 983.)

### III. DISPOSITION

The order appealed from is reversed and the matter is remanded with directions to enter an order granting appellant's petition.

Thompson, Acting P. J., and Beverly, J.,* concurred.

A petition for a rehearing was denied July 12, 1984, and respondent's petition for a hearing by the Supreme Court was denied August 22, 1984.

---

*Assigned by the Chairperson of the Judicial Council.