Opinion
BUTZ, J.
Plaintiffs Rachelle DeVore (individually and as administrator of the estate of her late husband, Oscar Alfaro) and her adult daughter, Steffani Hix,[1] filed a petition pursuant to Government Code section 946.6[2] for relief from the Government Claims Act (§ 810 et seq.) requirement of presenting a timely claim to a public entity before bringing a tort action against it (§§ 911.2, 945.4), because defendant Department of the California Highway Patrol (CHP) had denied plaintiffs’ alternative claim/request for leave to file a late claim (§ 911.4; see Mandjik v. Eden Township Hospital Dist. (1992) 4 Cal.App.4th 1488, 1500 [6 Cal.Rptr.2d 582]). The trial court denied the petition, concluding that facts establishing defendants’ potential liability to plaintiffs could have been discovered with reasonable diligence, so plaintiffs’ failure to engage the services of an attorney for more than six months after their cause of action arose did not constitute excusable neglect that would qualify them for relief under section 946.6 (citing our decision in People ex rel. Dept. of Transportation v. Superior Court (2003) 105 Cal.App.4th 39 [129 Cal.Rptr.2d 60] (Dept. of Transportation)), and precluded application of the doctrine of delayed discovery.[3]
On appeal, plaintiffs contend the trial court could not make findings on the issue of the accrual of their cause of action because this is beyond the scope *457 of a proceeding on a petition for relief under section 946.6. They further maintain that the facts contained in the petition entitle them to relief. We disagree with the former premise, but find that the facts establish grounds for relief under section 946.6. We therefore shall reverse the order with directions to grant the petition.
FACTUAL AND PROCEDURAL BACKGROUND
The trial court makes its determination regarding the petition “[on] the basis of the petition, any affidavits in support ... or in opposition . . . , and any additional evidence received at the hearing on the petition.” (§ 946.6, subd. (e).) We draw our facts from these sources.
Shortly after 10:00 p.m. on August 3, 2010, plaintiffs’ decedent was killed trying to avoid a multicar accident while riding his motorcycle on Interstate 505 outside Winters, California. He was thrown when his motorcycle went down on the shoulder, and fell 34 feet from a bridge.
Thomas Roberts, who was driving under the influence of alcohol and drugs, was the cause of the accident, having crashed after overcorrecting his steering. He fled the scene on foot, ineffectually attempting to hide from authorities in nearby shrubbery. His breath smelled strongly of alcohol; breath samples indicated alcohol levels of 0.067 percent, and extrapolation from a later blood draw indicated a blood-alcohol level at 10:00 p.m. of between 0.06 and 0.11 percent. The car was uninsured, with expired registration tags. Roberts was charged inter alia with gross vehicular manslaughter while intoxicated.
Plaintiffs were in contact with the victim liaison in the prosecutor’s office over the next few months. The liaison told them the process of bringing charges against Roberts could take several months, and prosecution might take years. Neither the liaison nor anyone else in the prosecutor’s office ever mentioned that Roberts had been the subject of a traffic stop earlier in the evening.
In March 2011, plaintiffs were present at a session of the ongoing preliminary hearing and learned for the first time about the earlier traffic stop. The prosecutor called defendant Sherwood as a witness. Defendant Sherwood testified that the prosecutor had first contacted him at the beginning of February 2011 about testifying. The officer did not at that time have any independent recollection of the traffic stop, but reviewed the video and audio *458 recording his patrol car had automatically made of it. At 8:20 p.m. on August 3, 2010, he had stopped the Roberts car for speeding about eight miles north of the City of Williams in Colusa County. From the video, it appeared to the officer that they had talked about whether Roberts had a driver’s license and the circumstances of the speeding violation. The officer did not issue a citation, only a verbal warning against speeding. He had not seen any indicium of intoxication.
Plaintiffs were surprised to hear there had been a traffic stop of Roberts less than two hours before the accident. A reexamination of the CHP report on the accident confirmed that it did not include any reference to the earlier traffic stop or defendant Sherwood. Plaintiffs contacted the victim liaison, who confirmed that there was a dispatch record and a video of the traffic stop, but plaintiffs could not have access to it. At a May 2011 session of the prehminary hearing, plaintiff DeVore approached the prosecutor and asked whether she (DeVore) should consult an attorney about filing an action against the CHP for failing to prevent the accident from happening. The prosecutor offered the opinion that it would be a hard case to prove because the officer had discretion about impounding the vehicle, and the several members of the Roberts family present in the car would have been stranded if it were impounded. He also offered the opinion that it would not be easy to find an attorney to take the case. Plaintiffs began to seek legal representation after a June session of the preliminary hearing. They found their present attorney in early July, and executed a retainer on July 29, 2011.
On August 3, 2011, counsel filed the notice of claim/application for leave to file a late claim. It asserted defendants’ liability for failure to carry out a mandatory duty to impound the Roberts car when Roberts was unable to produce a valid driver’s license. (Veh. Code, § 14607.6, subd. (c)(1) [peace officer “shall” impound car if driver fails to produce valid license].) The claim/application was denied in September 2011. In a request to CHP for public records, plaintiffs’ counsel obtained the daily field record for defendant Sherwood for August 3, 2010, which showed-a verbal warning for a speed infraction at 8:20 p.m. but no other identifying information. The CHP declined at that time to provide a copy of the recording from defendant Sherwood’s patrol car because it also contained “nonpublic” information that could not be redacted. The CHP did not have any other information relating to the traffic stop.
In denying the petition, the trial court stated, “Petitioners have not shown reasonable diligence in pursuing the claim, since Petitioners did not contact civil counsel until after the expiration of the six-month period. . . . The facts of this tragic incident suggest civil liability, and[,] if timely retained[,] counsel would have [had] a duty to ‘diligently pursue the pertinent facts of the cause of action to identify possible defendants.’ ([Citing Dept. of *459 Transportation, supra, 105 Cal.App.4th at p. 45].) The cause of action accrued at or near the time of the incident, because even if the delayed discovery rule applies, the Petitioners had reason to discover the earlier traffic stop as part of the investigation into civil liability.”
DISCUSSION
I. Standards of Review
Section 946.6 provides a procedure for relieving a party from the condition precedent of presenting a timely claim to a public entity before commencing an action against the public entity on the cause of action contained in the claim. (Ebersol v. Cowan (1983) 35 Cal.3d 427, 430-431 [197 Cal.Rptr. 601, 673 P.2d 271] (Ebersol).) In order to obtain relief, the party must establish that an application to the public entity for leave to file a late claim (§ 911.4) was filed in a reasonable period of time (not to exceed one year) after the accrual of the cause of action for reasons of inadvertence, mistake, surprise, or excusable neglect akin to the showing necessary for relief from default. (Dept, of Transportation, supra, 105 Cal.App.4th at p. 43.) As it is a remedial statute, a trial or appellate court must resolve any doubts in favor of the petition (Ebersol, supra, at p. 435), but the preference for a trial on the merits does not warrant relief if based on a perfunctory recital of diligence in support of excusable neglect (Dept. of Transportation, supra, 105 Cal.App.4th at p. 44; Department of Water & Power v. Superior Court (2000) 82 Cal.App.4th 1288, 1293 [99 Cal.Rptr.2d 173] (Water & Power); cf. Trailmobile, Inc. v. Superior Court (1989) 210 Cal.App.3d 1451, 1455-1456 [259 Cal.Rptr. 100] [same principle applied in context of dilatory prosecution]).
Upon finding an adequate showing that warrants relief, the trial court must then decide if granting the petition would be prejudicial to the public entity. (Ebersol, supra, 35 Cal.3d at p. 432.) In the absence of any evidence of particular prejudice to the public entity, a trial court abuses its discretion in denying a petition (Kaslavage v. West Kern County Water Dist. (1978) 84 Cal.App.3d 529, 538 [148 Cal.Rptr. 729]; Syzemore v. County of Sacramento (1976) 55 Cal.App.3d 517, 524 [127 Cal.Rptr. 741]; 1 Coates et al„ Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2013) § 7.33, p. 346 (Coates)), and if a denial is reversed for abuse of discretion the public entity is not entitled to marshal further evidence of prejudice on remand (Moore v. State of California (1984) 157 Cal.App.3d 715, 727 [203 Cal.Rptr. 847]).
An order denying a section 946.6 petition is an appealable order (Ebersol, supra, 35 Cal.3d at p. 435, fn. 8); an order granting the petition is reviewable only on appeal from the cause of action stated in the claim (see County of *460 Alameda v. Superior Court (1987) 196 Cal.App.3d 619, 622 [242 Cal.Rptr. 215]). We review the ruling on the petition for an abuse of discretion. (Dept. of Transportation, supra, 105 Cal.App.4th at p. 44.)
H. Jurisdiction to Adjudicate Accrual
In a proceeding on a section 946.6 petition, the trial court’s authority to rule on the issue of the accrual of a cause of action is a recurring procedural dilemma. (1 Coates, supra, §7.10, p. 323.) One strand of authority asserts that in the proceeding for relief, the issue of whether a claim was timely filed is not properly before the trial court; the court may consider only whether a plaintiff qualifies under one of the four categories (e.g., inadvertence, mistake, surprise, or excusable neglect). The second strand finds that a trial court can properly consider accrual in a proceeding on a petition for relief if necessary to its ruling, but this ruling does not preclude a second court from coming to a different conclusion in a legal action for damages that alleges a timely presentation of the claim. The third strand concludes that the trial court can properly consider timeliness, and its ruling on this issue in a petition proceeding has preclusive effect in the independent action for damages. (See Ovando v. County of Los Angeles (2008) 159 Cal.App.4th 42, 65, fn. 8 [71 Cal.Rptr.3d 415] [summarizing cases].)
Relying on the first strand, plaintiffs assert we should strike any finding in the order regarding the date on which their cause of action accrued. We agree with Coates that the first strand is anomalous because the date of accrual can be a necessary subsidiary finding in deciding whether a party qualifies for relief, even if section 946.6 does not authorize the court to grant relief on the basis that a claim was in fact timely. (1 Coates, supra, § 7.10, p. 323; accord, Santee v. Santa Clara County Office of Education (1990) 220 Cal.App.3d 702, 711-712 [269 Cal.Rptr. 605] [first strand states rule too broadly; trial court has authority and discretion either to rule or defer ruling on issue].) As we will be directing the trial court to grant relief—a nonappealable order without preclusive effects (1 Coates, supra, § 7.11, p. 324)—and do not ourselves need to decide the date of accmal of plaintiffs’ cause of action, we do not need to choose between the second and third strands regarding the future preclusive effects of a ruling on accrual in an order denying relief.
HI. Excusable Neglect
In Dept, of Transportation, we indeed noted the principle that neglect is not excusable where a party does not take any action within six months after the accrual of a cause of action; at the very least, the party must attempt to engage the services of an attorney to investigate the facts to identify potential defendants in any cause of action arising out of a damaging *461 incident. (Dept. of Transportation, supra, 105 Cal.App.4th at pp. 44-45.)[4] However, the facts that underlay the opinion involved a patent condition of public property: Whether roadside weeds and shrubbery were an attractant to arsonists, and represented a dangerous condition whether or not the fire leading to the injury started naturally or through criminal agency. (Dept. of Transportation, at p. 45.) “When there is a readily available source of information from which the potential liability of a [public] entity may be discovered, a failure to use that source is deemed inexcusable.” (Water & Power, supra, 82 Cal.App.4th at p. 1294, italics added.)[5] Thus, Dept. of Transportation turns on a claimant’s failure to consult an attorney about an accident arising from an obvious condition of public property, who in turn could have readily determined the potential liability of the public entity, in holding that this could not be excusable neglect. However, we did not hold expressly that this principle applies in the context of a claimant who does not reasonably have any basis to consult an attorney about the potential liability of a public entity, and cases are not authority for propositions not expressly considered. (In re Randy J. (1994) 22 Cal.App.4th 1497, 1504, fn. 7 [28 Cal.Rptr.2d 152].) Rather, the interpretive principle of ratio decidendi requires that we view the scope of a holding through the lens of the underlying facts. (Honey Baked Hams, Inc. v. Dickens (1995) 37 Cal.App.4th 421, 427 [43 Cal.Rptr.2d 595].)
Nor can such a principle be derived from Ebersol, which is among the cases cited in Dept, of Transportation for the general rale that a party must engage the services of an attorney in order to demonstrate excusable neglect. Ebersol involved a bus driver for a private company who transported developmentally delayed teenagers from their homes to a work-training facility; she was unaware this program was under the aegis of a public entity. She suffered severe injuries when one of the teenagers bit her. (Ebersol, supra, 35 Cal.3d at p. 432.) From the day of the incident she began to contact attorneys, nine of whom told her that she did not have any basis for redress against whatever third party managed the program. Four months later, after the time for filing a claim expired (a 100-day claim period then being in effect), she consulted with an attorney who proffered a theory of third party liability for failure to warn of dangerous propensities, and who then readily discovered the public entity status of the program. (Id. at pp. 432-433, 439.) Ebersol held that a party who diligently but unsuccessfully seeks representation within the period for filing a claim can still assert excusable neglect, *462 because at all times these unsuccessful diligent efforts were those of a reasonably prudent person. (Id. at pp. 437, 439.) The case as a result did not consider the issue of whether excusable neglect is barred for failure to engage an attorney in all circumstances, and consequently cannot be authority for that proposition.
Barragan v. County of Los Angeles (2010) 184 Cal.App.4th 1373 [109 Cal.Rptr.3d 501] (Barragan) expressly declines to find that there is a strict mandate for an injured party to engage the services of an attorney within the six-month period to establish excusable neglect. (Id. at pp. 1376-1377.) The asserted basis for the public entity’s liability was the nature of the rock and dirt embankment on which the plaintiff incurred her injuries after her car left the roadway. (Id. at pp. 1377, 1379.) The court concluded “there is no absolute rule barring excusable neglect when the claimant has failed to obtain counsel during the six-month period.” (Id. at p. 1385.) Rather, the question is whether “the failure to seek counsel could itself be considered the act of a reasonably prudent person under the same or similar circumstances . . . ,” in which case “excusable neglect is established.” (Ibid., italics added.) In the course of coming to this conclusion, Barragan noted another case had similarly interpreted Ebersol. (Barragan, at pp. 1383-1384, quoting Bertorelli v. City of Tulare (1986) 180 Cal.App.3d 432, 439 [225 Cal.Rptr. 582] [“even the failure to obtain legal advice will be excused when a different course of action is reasonably prudent”].) With debilitating injuries and depression, the claimant’s failure to consult with an attorney was the act of a reasonably prudent person. (Barragan, supra, at pp. 1385-1386.) Thus, even where an attorney could readily have determined the potential liability of the public entity, the failure to engage an attorney’s services can still be excusable neglect.
In the present case, by contrast, nothing in the accident report or the records of the CHP would have led plaintiffs or an attorney acting with reasonable diligence to discover the earlier traffic stop or the identity of defendant Sherwood (and the audio/video recording from his patrol car). The trial court does not identify what trail plaintiffs or counsel could have followed to lead to these facts within the limitations period, and the record does not explain how the prosecutor made the connection; it may even be that defendant CHP supplied the information to him.[6] Without this information, plaintiffs reasonably did not have any motivation to retain counsel, there being little point in hiring counsel otherwise to pursue a claim against an uninsured motorist facing a lengthy jail term. The mere fact that the accident *463 took place on a public roadway as a consequence of a drunken driver’s loss of control was not a basis for plaintiffs to assume there was potential liability for a public entity, which can arise only where a condition of the roadway presents a danger to those using it with due care. (Biscotti v. Yuba City Unified School Dist. (2007) 158 Cal.App.4th 554, 558-561 [69 Cal.Rptr.3d 825]; see Murrell v. State of California ex rel. Dept. Pub. Wks. (1975) 47 Cal.App.3d 264, 271-272, fn. 7 [120 Cal.Rptr. 812].) Thus, the failure to engage an attorney before learning about the earlier traffic stop (and through that the public entity’s potential connection with the accident) was the omission of a reasonably prudent person under similar circumstances. (Ebersol, supra, 35 Cal.3d at p. 435; Barragan, supra, 184 Cal.App.4th at p. 1385; Water & Power, supra, 82 Cal.App.4th at p. 1296.)
In a little more than three months after learning the fact, plaintiffs retained counsel (despite the prosecutor’s discouragement about the merits of pursuing an action against the CHP), who immediately filed the claim/leave to file late claim. This was not an unreasonably long period of time to file after obtaining the information about the potential liability of defendants. Defendants cite eight other cases (which appear in 1 Coates, supra, § 7.52, pp. 363-364) in which courts found that delays of various lengths (including some shorter than here) under various circumstances were unreasonable. However, we must review the present trial court’s ruling in light of the specific facts in the record before the court, and it is generally unproductive to compare different cases on a question of fact such as this. (People v. Rundle (2008) 43 Cal.4th 76, 137-138 [74 Cal.Rptr.3d 454, 180 P.3d 224] [sufficiency of evidence]; Robison v. City of Manteca (2000) 78 Cal.App.4th 452, 458, fn. 5 [92 Cal.Rptr.2d 748] [issue of undue influence]; State Compensation Ins. Fund v. Brown (1995) 32 Cal.App.4th 188, 202 [38 Cal.Rptr.2d 98] [status as independent contractor].) Suffice it to say that these cases generally involve complete inaction for a period longer than plaintiffs waited here to seek counsel, and mostly involve inaction on counsel’s part before filing an application for leave to file a late claim. None of these cases find unreasonable delay as a matter of law.
Defendants reiterate their wan claim of prejudice advanced in the trial court. They contend they will be forced to defend the case with defendant Sherwood’s stale memory. However, his memory had already declined by the time his involvement in the traffic stop came to light in March 2011, and he was forced to reconstruct it from the patrol car video and audio. As a result, there is no prejudicial change in the circumstances to defendants if plaintiffs are now given leave to pursue their claim.[7]
*464 In short, plaintiffs’ failure to discover a basis for public entity liability before March 2011 was excusable. The delay before they applied for leave to file a late claim was reasonable. Defendants have failed to demonstrate any particular prejudice from the delay in filing the claim. The trial court therefore abused its discretion in denying the petition.
DISPOSITION
The order denying the petition is reversed with directions to grant the petition. Plaintiffs shall recover their costs of appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)
Blease, Acting P. J., concurred.

 We will generally refer to plaintiffs in the plural, although it does not appear plaintiff Hix took any active part in the events.

 Undesignated statutory references are to the Government Code.

 The parties represent that plaintiffs had concomitantly filed a tort action against the CHP and defendant Justin Sherwood (a CHP officer). Defendants apparently filed a demurrer in that action based on the preclusive effect of the ruling in the present matter, which the trial court denied on the ground that the present matter was on appeal.

 Among the cases we cited was Ebersol, which also stated this principle (Ebersol, supra, 35 Cal.3d at p. 435). Ebersol, however, found that a party who diligently but unsuccessfully sought representation within the period for filing a claim can still assert excusable neglect. (Id. at pp. 437, 439.)

 Although one might think that discovering a new fact would be more in the nature of “surprise,” cases and commentary categorize it under excusable neglect. (See 1 Coates, supra, § 7.22, p. 334.)

 It is speculation for defendants to suggest that had plaintiffs retained an attorney earlier, the attorney would have discovered the facts in the prosecutor’s possession earlier than plaintiffs. Moreover, the record does not indicate the prosecutor was even aware of defendant Sherwood for any appreciable time before contacting him in early February 2011.

 Moreover, it would not appear that the litigation of plaintiffs’ claim will survive a demurrer (and thus require delving into defendant Sherwood’s memory). In California Highway Patrol v. Superior Court (2008) 162 Cal.App.4th 1144, 1155 [76 Cal.Rptr.3d 578], we held that *464 Vehicle Code section 14602.6, which provides that a peace officer “may" impound the vehicle of a person driving with a suspended or revoked license, did not impose a mandatory duty that could be the basis for a tort action against a public entity (Gov. Code, § 815.6) for the failure of a CHP officer to impound the car of a drunken driver who retrieved it after his release from custody and killed another driver later that day. Plaintiffs will be hard pressed to distinguish the statute on which they are relying here (Veh. Code, § 14607.6), given that the use of “shall” is not necessarily the sine qua non of a mandatory duty under Government Code section 815.6. (San Mateo Union High School Dist. v. County of San Mateo (2013) 213 Cal.App.4th 418, 429 [152 Cal.Rptr.3d 530] [ultimate question is whether “commanded” act does or does not lend itself to a “ ‘normative or qualitative debate’ ” over manner in which undertaken].) However, we do not have any occasion to resolve that issue in the present action.