Filed 10/25/22 Hogrefe v. County of Trinity CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Trinity)

----

| | |
|---|---|
| RANDOLPH HOGREFE, | C093344 |
| Plaintiff and Appellant, | (Super. Ct. No. 20CV085) |
| v. | |
| COUNTY OF TRINITY et al., | |
| Defendants and Respondents. | |

As a young child, plaintiff Randolph Hogrefe testified as an eyewitness to the murder of Gary "Hop" Summar, leading to the conviction of murder suspect Robert Fenenbock. (*People v. Fenenbock* (1996) 46 Cal.App.4th 1688 (*Fenenbock*).) Nearly 30 years later, Hogrefe submitted a tort claim under the Government Claims Act (Gov. Code, § 810, et seq. (Act); further undesignated statutory references are to the Government Code) to respondent County of Trinity (County), alleging that county law enforcement and other county employees implanted and coached his testimony in the

1

1990s, causing him to testify falsely about Summar's murder, which he originally maintained he had not witnessed. The County denied the claim as untimely, and then later returned his application to file a late claim without taking any action after finding the application was also untimely. Thereafter, Hogrefe petitioned the superior court under section 946.6 for relief from the claim filing requirement.

He now appeals from the trial court's order denying his section 946.6 petition.[1] Hogrefe contends that because he only recently discovered that the implanted memories and his resultant testimony were false, that his claim was timely filed under the delayed discovery rule, and that his petition for relief from late claim requirements, which he filed out of an abundance of caution after the County denied his claim, was not actually necessary. He therefore requests that we reverse the trial court's order denying the petition, and direct the trial court to dismiss the petition for relief as moot.

Alternatively, Hogrefe argues that even if relief from the claim requirements was required, the trial court exceeded its jurisdiction and abused its discretion in deciding when his claim accrued and the applicability of the delayed discovery rule, which were disputed issues of fact more properly left for a jury's determination. Finally, he seeks confirmation from this court that he is still free to pursue his federal complaint against

---

[1] In addition to respondent County of Trinity, Hogrefe's petition named Trinity County Sheriff's Office, Sergeant Dan Kartchner and Detective Eric Palmer, in their individual and official capacities as detectives for the Trinity County Sheriff's Office, Trinity County Department of Health & Human Services, Trinity County Child Protective Services, and Donna Gordon, in her individual and official capacity with Trinity County Child Protective Services. These parties are sometimes collectively referred to as respondents.

respondents that pleads compliance with the claim's statute notwithstanding the trial court's adverse accrual determination below.[2]

We conclude that the trial court had authority to determine the accrual date of Hogrefe's claim when ruling on the petition for relief because the accrual date was a subsidiary finding under section 946.6. in determining whether Hogrefe was entitled to relief from the claim filing requirements. We further conclude that even though the parties presented conflicting evidence regarding when his claim accrued, substantial evidence supports the trial court's finding that at the latest Hogrefe's claim accrued in 2006, and, thus, that his 2019 application for leave to file a late claim was untimely. We decline the parties' request to provide an opinion on the preclusive effect, if any, of the trial court's findings regarding accrual, the applicability of the delayed discovery rule, and the timeliness of Hogrefe's claim in Hogrefe's pending federal action in which he alleges that he timely filed his claim for relief with the County. That determination is more properly decided by the federal court in the first instance.

We shall affirm the trial court's order denying Hogrefe's section 946.6 petition for relief from the claim presentation requirements.[3]

---

[2] In May 2020, Hogrefe filed a complaint against respondents and others in the United States District Court for the Eastern District of California entitled *Hogrefe v. County of Trinity, et al.* (Case No. 2:20-CV-01028-MCE-DMC).

[3] Hogrefe requests that we take judicial notice of the transcripts of the Solano County Superior Court's rulings on Fenenbock's motion to dismiss for outrageous criminal conduct and his motion for a finding of actual innocence, as well as his federal complaint against respondents. Respondents oppose the motion. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) No exceptional circumstances exist that would justify deviating from that rule by taking judicial notice of the requested materials. The request is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

*A.      The Murder of Hop Summar and Hogrefe's Trial Testimony*

In October 1991, Hop Summar was gruesomely murdered in Hawkins Bar, a small community in Trinity County, by a group of people who wrongly believed that he had molested the five-year-old daughter of Barbara Adcock. (*Fenenbock, supra*, 46 Cal.App.4th at pp. 1692-1698.) Summar had been bludgeoned and stabbed over 70 times; he had numerous facial factures, severe trauma to his genitals, his left ear had been cut off while he was still alive, his left eye had been cut out, and he was stabbed 18 times in the skull and 13 times in the chest. (*Id.* at p. 1698.)

At the time of Summar's killing, Adcock lived with her boyfriend Bernard "Bird" MacCarlie and her three children, including Hogrefe, who was nine years old. (*Fenenbock, supra*, 46 Cal.App.4th at pp. 1692-1693, 1696.) Summar sometimes stayed in the trailer that MacCarlie shared with Adcock and her children. (*Id.* at pp. 1692-1693, 1696.)

Immediately after Summar was murdered, Hogrefe was removed from his mother's home, and he was placed into the custody of respondent Trinity County Child Protective Services (CPS). Respondent Donna Gordon, a CPS social worker, was appointed his guardian ad litem.

During the murder investigation, Hogrefe was interviewed numerous times by law enforcement, including by respondents Sergeant Dan Kartchner and Detective Eric Palmer of the Trinity County Sheriff's Office, often without a parent or guardian present. Although he repeatedly told police, social workers, and therapists[4] that he had not witnessed Summar's murder, they kept telling him that he was present, that he was lying,

---

[4] Neither of the therapists nor their employer, Northern California Youth and Family Services, were governmental employees or entities.

that he had witnessed the murder, and that numerous people were going to testify that he was present and witnessed the murder.

Nine people were eventually charged with murdering Summar, including Robert Fenenbock.[5] (*Fenenbock, supra*, 46 Cal.App.4th at p. 1692.) Hogrefe testified as a witness in Fenenbock's trial. (*Id.* at p. 1696.) At some point on the day Summar died, Hogrefe slept on a mattress in the back of his mother's white Ranchero. (*Id.* at pp. 1695-1696.) He testified at trial that after stopping at the top of a hill near a campground where a group of local residents and drifters, including Hogrefe's mother and MacCarlie often hung out, the Ranchero drove to a place where the men in the Ranchero, whom Hogrefe identified as MacCarlie, Fenenbock, Leafe Dodds, and Redbeard Bob Bond, started stabbing Summar, who was also in the car. (*Id.* at pp. 1692, 1695-1696.) Afterwards, the men dragged Summar to another spot. (*Id.* at p. 1696.) Hogrefe further testified that after the killing, MacCarlie drove to another location and dropped off Redbeard Bob and Fenenbock. (*Id.* at p. 1698, fn. 4.)

The jury found Fenenbock guilty of first degree murder in 1994, and he was sentenced to state prison for 25 years to life plus one year for use of a deadly weapon. (*Fenenbock, supra*, 46 Cal.App.4th at p. 1692.) His conviction and sentence were affirmed by Division 1 of the First District Court of Appeal in 1996. (*Id.* at p. 1709.) One of the issues Fenenbock raised on appeal was whether Hogrefe had been subjected to such suggestive and coercive interview techniques by his therapists that it could no longer be said that he was testifying from his own personal recollection and knowledge and that his testimony should have been excluded. The court found Fenenbock had forfeited the issue by failing to challenge the admissibility of Hogrefe's testimony during trial.

---

[5] Eight persons were ultimately tried for Summar's murder in three separate trials, including Hogrefe's mother.

*B.     Habeas Corpus Proceedings*

In the decades following his conviction, Fenenbock and several codefendants petitioned numerous times for writs of habeas corpus, again raising the issue that Hogrefe's testimony had been improperly influenced and coerced.  As part of the habeas proceedings, they also sought to discover, among other things, all CPS and therapy records regarding Hogrefe from 1991 to the present.

In August 2017, Fenenbock filed a petition for writ of habeas corpus in Solano County Superior Court seeking to overturn his murder conviction based on testimony from MacCarlie in his own trial, which took place after Fenenbock's trial, that MacCarlie alone had stabbed Summar and that Fenenbock was not involved.  In August 2019, the Solano County court found that Fenenbock was entitled to relief, vacated his judgment and sentence, and granted him a new trial.

Fenenbock subsequently moved to dismiss the state criminal action against him based on outrageous government conduct.  Hogrefe testified at a hearing on Fenenbock's motion to dismiss in January 2020.  During his testimony, Hogrefe stated that as a child he believed he "had to testify to the story that was in front of [him]," and that he had been told that if he did not testify as such that the defendants were going to get out and they were going to kill him.

*C.     The Innocence Project*

On March 13, 2019, prior to Fenenbock being granted a new trial, a representative of the Northern California Innocence Project contacted Hogrefe and informed him that the Innocence Project was assisting Fenenbock in attempting to overturn his murder conviction based in part on the theory that respondents had manipulated Hogrefe as a child and coerced false testimony from him regarding witnessing Summar's murder.  In August 2019, Hogrefe reviewed copies of his original statements to law enforcement and others, including several transcripts of taped interviews in which he repeatedly denied

6

seeing Summar murdered, which the Innocence Project representative had provided to him.

*D.      Hogrefe's Government Claim against Respondents*

On September 12, 2019, Hogrefe filed a government claim for damages pursuant to section 911.2 with the Trinity County Board of Supervisors Office, alleging that he had sustained psychological torture, and severe mental and emotional pain and suffering as a result of respondents' fraudulent actions in manipulating and coercing him into testifying falsely against Fenenbock and others charged with Summar's murder. He alleged that he had only recently discovered respondents' fraudulent acts after being contacted by the Innocence Project on March 13, 2019.

In October 2019, the County denied Hogrefe's claim, finding it untimely. To the extent Hogrefe intended his claim to be construed as an application to present a late claim, the County returned it to him because it did not substantially comply with the legal requirements for presenting a late claim.

The following month, in November 2019, Hogrefe filed an application for leave to present a late claim pursuant to section 911.4. He alleged that his personal injury cause of action accrued on March 13, 2019, when he first discovered the fraud perpetrated by respondents, and that he had timely presented his claim to the County in September 2019 under the delayed discovery rule. Hogrefe made clear that he did not intend for his initial claim to be an application to present a late claim since he believed his claim was timely made after discovering the full extent of respondents' actions during the Summar murder investigation. To the extent he failed to present his claim within the six months specified in section 911.2, subdivision (a), Hogrefe maintained that he did so based on mistake, inadvertence, surprise and excusable neglect in not discovering respondents' fraud until March 13, 2019.

7

In January 2020, the County returned Hogrefe's application to present a late claim without having taken any action on it after finding that Hogrefe had failed to timely file the application. According to the County, the application was not presented within a reasonable time not to exceed one year after the date of accrual of the cause of action as required by section 911.4. The County notified Hogrefe that if he wished to file a court action on the matter, he first had to petition the court for an order relieving him from the claims presentation requirement in section 945.4.

## E.     Hogrefe's Federal Action

As noted above, in May 2020, Hogrefe filed a complaint against respondents and others in the United States District Court for the Eastern District of California entitled *Hogrefe v. County of Trinity, et al.* (Case No. 2:20-CV-01028-MCE-DMC). Hogrefe also concurrently filed a petition under section 946.6 for an order relieving him of the claim presentation requirements.

In June 2020, the parties stipulated that Hogrefe would withdraw his petition for relief in the federal action and refile it in Trinity County Superior Court. The parties further stipulated that the proceedings in the federal action would be stayed until the filing, resolution and ruling by the state court on Hogrefe's petition for late claim relief.

## F.     Petition for Relief from Claim Presentation Requirements

In July 2020, Hogrefe filed a petition for an order relieving him of the government claim presentation requirements in Trinity County Superior Court (§ 946.6). Hogrefe and his counsel filed supporting declarations with attached exhibits, including excerpts from several of Hogrefe's interviews as a child with County law enforcement, his CPS guardian ad litem, and therapists, as well as transcripts from a January 2020 hearing on Fenenbock's motion to dismiss for outrageous government conduct.

8

The petition alleged that Hogrefe's claim against respondents for personal injury accrued on March 13, 2019, which was the first date he had discovered facts constituting fraud and giving rise to the claim, and facts sufficient to put a reasonably prudent person on inquiry notice of the fraud and claim. Hogrefe asserted that his claim was timely under the delayed discovery rule, and he expressly requested in the petition that the trial court "confirm[] that the claim was timely filed or alternatively, reliev[e] him from the claim presentation requirements [as a] result of mistake, inadvertence, surprise, or excusable neglect." Hogrefe's briefing on the petition also requested "an order that the claim was timely filed," citing authority that "[t]he issue of whether a claim was timely filed may be decided in a claim-relief proceeding."

In his supporting declaration, Hogrefe declared that he was taken into CPS custody shortly after the murder, and that over the next several months he was interviewed repeatedly by respondents without a parent or guardian present. He was rewarded when he repeated the story respondents fed him about witnessing Summar's killing, and he was called a liar whenever he said that he had not witnessed the murder. Sergeant Kartchner took him to the murder scene and showed him Summar's blood on the ground and also a picture of MacCarlie's bloody knife. Shortly after visiting the crime scene, Hogrefe complained to his father and stepmother during an unsupervised visit about the police interview, and afterwards he was never allowed to see his father and stepmother again unsupervised. By the time of trial, he was so confused and upset that he unwittingly abandoned the truth and accepted the false version of events as reality. He always believed that the reason he could not remember the murder was because he had suppressed the memory, although he tried to avoid thinking about this time period at all. He once again averred that he did not learn of respondents fraud until contacted by the Innocence Project in March 2019.

Respondents opposed the petition, arguing Hogrefe's claim was untimely as the events occurred nearly 30 years ago in 1991; that because Hogrefe was aware of the facts

9

underlying his claim in 1991, the delayed discovery rule did not apply; that numerous publicly available appellate documents had been filed since the 1990s asserting that Hogrefe's testimony had been manipulated and coerced; and that in 2006, Sergeant Kartchner went to Hogrefe's home to advise him of the pending habeas proceedings, including the contention that he had been coerced or manipulated as a child into testifying falsely, but that he did nothing in response to the information. Respondents requested that the trial court take judicial notice of thousands of pages of legal pleadings and transcripts regarding Fenenbock's and his codefendants' attempts over the prior two decades to overturn their convictions on appeal and through habeas corpus proceedings.

In support of their opposition, respondents also filed a declaration from Sergeant Kartchner. Kartchner declared that he had investigated Summar's murder, and had attended all three trials of those charged with his murder. According to Kartchner, in early 2006 he was contacted by Glenn Pruden, the deputy attorney general assigned to defend several of the petitions for habeas corpus filed in federal court, including Fenenbock's, which alleged that Hogrefe's trial testimony had been coerced. Pruden requested that Kartchner contact Hogrefe to discuss the claims being made in the federal habeas actions. Kartchner located Hogrefe in Shasta County, and around mid-May 2006, went to his home and personally met with Hogrefe. At that meeting, Kartchner claimed that he had informed Hogrefe about the petitions for habeas corpus and the codefendants' claims that Hogrefe had been coerced into testifying falsely during the Summar murder trials. Kartchner informed Hogrefe that he might be contacted by counsel for the codefendants concerning those claims, and that he might have to testify in federal court on the matter. According to Kartchner, Hogrefe said that he had put the murder trials out of his mind and that he did not want anything to do with it anymore. Hogrefe also told Kartchner that years prior to their 2006 meeting, while he was in school, Hogrefe had been contacted by an investigator to discuss the murder, he did not want to speak with the investigator and his football coach stepped in to assist him in ending the conversation.

10

Respondents submitted a declaration from Glenn Pruden stating that in March 2006, he contacted Kartchner to apprise him of the federal habeas proceedings and to request that he contact Hogrefe to let him know about the claims being made and that he might have to testify in federal court if an evidentiary hearing was granted. In May 2006, Pruden spoke with Kartchner, who informed him that he had finally met with Hogrefe after several unsuccessful attempts, and that he had explained the federal habeas proceedings and the claims alleging that Hogrefe had been coerced into testifying falsely during the murder trials. Kartchner told Pruden that Hogrefe had said he had put the murder trials behind him, and that he appeared reluctant to get involved in the federal proceedings. Kartchner also relayed to Pruden that Hogrefe had said that an investigator had attempted to contact him at school years earlier, but that his football coach intervened and prevented him from speaking with the unidentified man, whom Pruden and Kartchner assumed must have been a defense investigator.

In reply, Hogrefe argued that as a nine-year-old child in foster care respondents manipulated and coerced him into believing falsehoods concerning Summar's murder, and that he always believed his inability to recall the events surrounding the murder was a result of repressed memories. It was not until March 2019 that he learned that the reason he did not remember Summar's murder was because he had not actually witnessed it, and that it was only then that he finally appreciated that his false memories and beliefs were attributable to respondents' wrongful conduct.

Hogrefe submitted a second declaration denying that he had any notice or knowledge of the appeals and habeas petitions that the defendants had filed over the years. He also denied that Kartchner, or any other investigator, had ever shown up at his home in 2006 to inform him that Fenenbock and his codefendants were challenging their convictions on the basis that Hogrefe's testimony as a child had been coerced and manipulated. Had he met with Kartchner in 2006, he would have told his wife about the meeting immediately. Hogrefe's wife submitted a declaration stating that Hogrefe never

11

mentioned meeting with Kartchner in 2006, and that he would have done so had such a meeting actually occurred.

The court considered Hogrefe's petition at a hearing on August 28, 2020. No testimony was taken during the hearing, but the court did grant respondents' request for judicial notice filed in support of its opposition.

At the hearing, Hogrefe argued that none of respondents' evidence conclusively established that he had any notice of wrongful conduct prior to March 2019. In his view, he had presented sufficient evidence to raise a question as to the applicability of the delayed discovery rule, which he argued was generally a question of fact and could only be a question of law when no reasonable minds could differ. Hogrefe further argued that knowledge of Fenenbock's and the other codefendants' various appeals and habeas petitions could not be imputed to him, nor could his biological father, who had no parental rights at the time, be charged with knowing about respondents' misconduct based on Hogrefe's single complaint to him after being taken to the crime scene by Kartchner shortly after the murder. Hogrefe asserted that Kartchner's declaration stating that he had visited Hogrefe in 2006 and told him about the coercion and manipulation allegations was false.

Respondents argued at the hearing that a mere suspicion of wrongdoing triggered Hogrefe's duty to inquire and investigate any potential injury claims, and that the evidence, including Hogrefe's own declarations and his testimony at Fenenbock's motion to dismiss hearing in January 2020, showed that he had such a suspicion, and that any reasonable person in his position would have had such a suspicion. Thus, the delayed discovery rule did not apply.

After considering the parties' briefs, arguments, declarations, and documentary evidence, the court denied Hogrefe's petition. The court orally ruled that there was "no valid basis for allowing the delayed claim" because Hogrefe's "claim accrued, if not sooner, no later than 2006, for the reasons stated in [respondents'] papers."

12

In a subsequent written order, the trial court found that it could make factual determinations relating to the timeliness of a claim if the timeliness of the claim was disputed, which it was here. The court then found that Hogrefe was on inquiry notice of his claims no later than 2006 for numerous reasons, including that he had a suspicion of the alleged wrongdoing since he testified as a child, that he had no memory of the killing even though he knew he testified that he had witnessed it, that at the time he felt as if he had to testify to "the story that was in front of him," and that he purposefully avoided thinking about the events related to his present claim. The court further found that Sergeant Kartchner had alerted Hogrefe to the claim in 2006, and that Hogrefe could have accessed his prior statements and trial testimony, as well as the publicly filed documents in the numerous appeals and habeas proceedings, which all raised the issue of whether his testimony had been improperly manipulated and coerced. Because the court found that Hogrefe's claim accrued no later than 2006, the court found that his claim as well as his application to present a late claim, which he did not file until 2019, were both untimely. Hogrefe timely appealed the trial court's denial of his section 946.6 petition for late claim relief.

## DISCUSSION

### I

### *Government Claim Presentation Requirements*

Before a suit for money or damages may be brought against a public entity, the Government Claims Act (§ 810 et seq.) requires that the injured party timely present a claim to the public entity. (§ 911.2.) The failure to do so generally bars the party from bringing suit against that entity. (§ 945.4.)[6]

---

[6] Section 945.4 provides: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which

13

Under the Act, personal injury claims must be presented not later than six months after a cause of action accrues. (§ 911.2, subd. (a) ["A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action"].) "The date of accrual for purposes of the claim presentation requirement is the same date on which the cause of action would accrue for purposes of the statute of limitations in an action against a private party." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 63 (*Ovando*); § 901.)

If an injured party fails to present a timely claim, he or she may file a written application with the public entity for leave to present a late claim. (§ 911.4, subd. (a) ["When a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim"]; *J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219-1220.) The application to file a late claim must be presented to the public entity no later than one year after the accrual of the cause of action. (§ 911.4, subd. (b) ["The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim"].) "Unless the one-year period is tolled (see § 911.4, subd. (c)), the public entity is 'powerless to grant relief' if an application for leave to file a late claim was presented after the one-year deadline." (*Coble v. Ventura County Health Care Agency* (2021) 73 Cal.App.5th 417, 421, citing *Hom v. Chico Unified School Dist.* (1967) 254 Cal.App.2d 335, 339.)

---

a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

If the public entity denies an application for leave to present a late claim, section 946.6 authorizes an injured party to petition the trial court for relief from the claim-filing requirements. (§ 946.6; *J.J. v. County of San Diego, supra*, 223 Cal.App.4th at p. 1220.) Under section 946.6, a trial court shall relieve the petitioner from the requirement to file a claim within six months of accrual (§ 945.4), if the court finds that the application to file a late claim under section 911.4 was made within a reasonable time not to exceed one year from date of accrual, and "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4." (§ 946.6, subd. (c)(1).) "[F]iling a late-claim application within one year [after the accrual of the cause of action] is a jurisdictional prerequisite to a claim-relief petition." (*Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 (*Santee*).)

"The court shall make an independent determination upon the petition [for relief from the claim requirements]. The determination shall be made upon the basis of the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition." (§ 946.6, subd. (e).)

An order denying a section 946.6 petition is appealable. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8.) We review a trial court's ruling on the petition for an abuse of discretion. (*DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 460 (*DeVore*).) Because section 946.6 is a remedial statute intended to relieve unwary claimants trapped by technical rules, a trial court decision denying relief will be scrutinized more carefully than an order granting relief. (*Ovando, supra,* 159 Cal.App.4th at p. 64.)

15

## II

### *Jurisdiction to Adjudicate the Date of Accrual*

Hogrefe contends that the trial court exceeded its jurisdiction and abused its discretion in determining when his cause of action accrued in ruling on his section 946.6 petition because the date of accrual is a factual issue, which is properly decided by a jury at trial and not by the court in a section 946.6 proceeding. Respondents, on the other hand, argue that in determining whether Hogrefe was entitled to relief under section 946.6, the trial court necessarily had to determine when his claim accrued in order to decide whether he had filed his late claim application within one-year of accrual as jurisdictionally required under the statute.

This court has previously recognized that "[i]n a proceeding on a section 946.6 petition, the trial court's authority to rule on the issue of the accrual of a cause of action is a recurring procedural dilemma." (*DeVore, supra*, 221 Cal.App.4th at p. 460.) Other courts have likewise observed that "[a]uthority diverges on whether the trial court has the power to determine the issue of a claim's timeliness in a claim-relief proceeding." (*Santee, supra*, 220 Cal.App.3d at p. 711.)

*DeVore* explained that "[o]ne strand of authority asserts that in the proceeding for *relief*, the issue of whether a claim was timely filed is not properly before the trial court; the court may consider only whether a plaintiff qualifies under one of the four categories (e.g., inadvertence, mistake, surprise, or excusable neglect)." (*Ibid., supra*, 221 Cal.App.4th at p. 460.) A "second strand finds that a trial court can properly consider accrual in a proceeding on a petition for relief if necessary to its ruling, but this ruling does not preclude a second court from coming to a different conclusion in a legal action for damages that alleges a timely presentation of the claim." (*Ibid.*) "The third strand concludes that the trial court can properly consider timeliness, *and* its ruling on this issue in a petition proceeding has preclusive effect in the independent action for

16

damages." (*Ibid.*, citing *Ovando, supra*, 159 Cal.App.4th at p. 65, fn. 8 [summarizing cases].)

Although Hogrefe stated in the court below that he brought the section 946.6 petition for relief out of an abundance of caution in order "to obtain an order that the claim was timely filed," argued that "[t]he issue of whether a claim was timely filed may be decided in a claim-relief proceeding," and devoted the majority of his briefs to arguing that his claim was timely under the delayed discovery rule. Hogrefe now relies on the first strand of cases described above to argue on appeal that in a proceeding for relief from the claim filing requirement under section 946.6, the issue of whether a claim was timely filed is not properly before the trial court, and that the trial court here abused its discretion in deciding the timeliness issue. (See e.g., *Ngo v. County of Los Angeles* (1989) 207 Cal.App.3d 946, 951-952 [because section 946.6 authorizes a court to relieve a plaintiff from the claim presentation requirement, but does not authorize a court to determine that the plaintiff complied with the claim presentation requirement by presenting a timely claim, the timeliness issue is not before the court in a relief proceeding]; *Rason v. Santa Barbara City Housing Authority* (1988) 201 Cal.App.3d 817, 822, 827 ["[a] trial court hearing a section 946.6 petition cannot consider whether a claim was timely, because that issue is not within the scope of the proceeding"]; *Scott v. County of Los Angeles* (1977) 73 Cal.App.3d 476, 481-482; see also, *Gurrola v. County of Los Angeles* (1984) 153 Cal.App.3d 145, 150 [stating that it was improper for the court to decide that the claim was untimely but that because the petitioner sought such a determination, and did not appeal the adverse finding, he was bound by collateral estoppel in a subsequent civil action].) Based on this authority, Hogrefe also contends that a finding as to the date of accrual by a court in connection with a section 946.6 petition cannot deprive the plaintiff of the right to a jury trial on this issue and therefore is not binding in a later action for damages. (See *Ngo,* at pp. 951-952; *Scott*, at pp. 481-482.)

17

Respondents, not surprisingly, rely on the third strand of cases suggesting that a section 946.6 petition necessarily puts the date of accrual at issue and that the court's determination that a claim was untimely is binding in a later action for damages. (See e.g., *Reyes v. County of Los Angeles* (1988) 197 Cal.App.3d 584, 588, 595-596, fn. 5; *County of Los Angeles v. Superior court* (1985) 169 Cal.App.3d 1095, 1097, 1101-1102.)

In *DeVore*, this court found that "the first strand is anomalous because the date of accrual can be a necessary subsidiary finding in deciding whether a party qualifies for relief, even if section 946.6 does not authorize the court to grant relief on the basis that a claim was in fact timely." (*DeVore, supra*, 221 Cal.App.4th at p. 460.) We see no reason to depart from *DeVore*'s reasoning here.[7]

Section 946.6 provides in relevant part that a trial court "shall relieve the petitioner from the requirements of Section 945.4 *if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4 [within one year of accrual]* . . . . and that . . . [¶] [t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect . . . ." (§ 946.6, subd. (c)(1), italics added.) Contrary to Hogrefe's argument that a trial court is only allowed to make "subsidiary findings" as to "whether a claimant has shown the requisite level of inadvertence, mistake, surprise or excusable neglect," the language in section 946.6, subdivision (c) (1) makes clear that in ruling on the petition, the trial court is also called upon to determine whether the petitioner submitted the application to file a late claim with the public entity no later than one year of when the petitioner's cause of action accrued. (*Santee, supra*, 220 Cal.App.3d at p. 713 ["[F]iling

---

[7] Because the *DeVore* court directed the trial court to grant relief, the majority found it need not choose between the second and third strands regarding the future preclusive effects of a ruling on accrual in an order denying relief. (*DeVore, supra* 221 Cal.App.4th at p. 460.)

18

a late-claim application within one year [after the accrual of the cause of action] is a jurisdictional prerequisite to a claim-relief petition"].) Hence, the date of accrual is also a subsidiary issue when deciding whether a petitioner is entitled to relief under section 946.6.

And we reject the notion that by making a subsidiary finding as to the accrual date in a petition for relief proceeding, a trial court improperly converts a question of fact to one of law. Under section 946.6, a trial court is permitted to "make an *independent determination upon the petition*" based on "the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition." (§ 946.6, subd. (e), italics added.) Noticeably absent from the statute, however, is any limitation on the court's authority to make an "independent determination upon the petition," including making factual findings whenever the parties submit conflicting affidavits or evidence. (*Ibid.*)

In this case, as the statute expressly contemplates (§ 946.6, subd. (c)(1)), and after Hogrefe directly raised the issue in his petition and briefing below, the court properly considered the evidence presented and independently determined when Hogrefe's cause of action accrued, which was a necessary subsidiary finding to determining whether Hogrefe had timely submitted his application to file a late claim under section 946.6.

Having concluded that the trial court had authority to determine the accrual date of Hogrefe's cause of action when ruling on the petition for relief, we turn next to the propriety of the trial court's accrual determination.

III

*Substantial Evidence Supports the Trial Court's Accrual Determination*

For the claim presentation requirement, the date of accrual is the same date on which a cause of action would accrue for purposes of the statute of limitations in an action against a private party. (*Ovando, supra*, 159 Cal.App.4th at p. 63; § 901.)

19

Generally, a cause of action accrues when the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) But there is an exception to the general rule known as the delayed discovery rule. (*Ibid.*) Under that exception, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) A plaintiff discovers the cause of action when he or she at least suspects a factual basis, as opposed to a legal theory, for its elements. (*Ibid.*) A plaintiff has reason to discover a cause of action when he or she has notice or information of circumstances that would put a reasonable person on inquiry notice. (*Id.* at pp. 397-398.)

Here, the trial court found that Hogrefe's cause of action against respondents accrued no later than 2006. The court therefore rejected Hogrefe's argument under the delayed discovery rule that the first time he became aware of respondents' wrongful conduct was in March 2019 when he was contacted by a representative of the Innocence Project. In so ruling, the trial court found Sergeant Kartchner's declaration credible wherein he stated that in May 2006 he went to Hogrefe's house and personally told him that Fenenbock and the codefendants were challenging their convictions in federal habeas corpus proceedings in which one of the issues was whether Hogrefe had been coerced as a child into testifying falsely about Summar's murder.

Where, like here, the facts regarding accrual and the statute of limitations are disputed, the issue is a factual one as opposed to a legal one. (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320.) A trial court's factual findings are subject to limited appellate review and will not be disturbed on appeal if supported by substantial evidence. (See e.g., *People v. Zamudio* (2008) 43 Cal.4th 327, 342 [trial court's findings of historical fact is reviewed under the deferential substantial evidence standard; if there is conflicting testimony or evidence, appellate court must accept the trial court's resolution of disputed facts and inferences and its evaluations of credibility to the extent the record supports them]; *Williams v. Saunders* (1997) 55 Cal.App.4th 1158,

20

1162.) As long as there is substantial evidence, the appellate court must affirm, even if the reviewing justices personally would have ruled differently if they had presided over the proceedings below and even if other substantial evidence supports a different result. (*Bowers v. Bernards* (1980) 150 Cal.App.3d 870, 873-874.)

Given the applicable, deferential standard of review, and in light of the evidence in the record, in particular Sergeant Kartchner's declaration, we are constrained to conclude that sufficient evidence supports the trial court's factual findings that in 2006 Kartchner alerted Hogrefe to the allegation of respondents' wrongful conduct, which Fenenbock and his codefendants had raised in their federal habeas corpus proceedings, and that this notice would have put a reasonable person on inquiry notice of a possible claim against respondents.[8] It is well settled that the testimony of a single witness is sufficient for the proof of any fact. (*People v. Avila* (2009) 46 Cal.4th 680, 703.) This is so even though Hogrefe's second declaration denied that the meeting with Kartchner in 2006 had ever occurred, as we cannot substitute our evaluation of a witness's credibility for that of the fact finder. (*People v. Snow* (2003) 30 Cal.4th 43, 66 [under the prevailing standard of review for a sufficiency claim, we defer to the trier of fact's evaluation of credibility].)

Nor does the fact that the trial court made the accrual findings based on the parties' written declarations rather than live testimony from Hogrefe or Sergeant Kartchner dictate a different result. Section 946.6, subdivision (e) "makes clear that when no testimonial evidence is offered, the court may decide whether to grant relief on the basis of the petition and declarations offered in support of, or opposition to, the petition." (*County of Santa Clara v. Superior Court* (1971) 4 Cal.3d 545, 553-554, fn.

---

[8] In light of our conclusion that Sergeant Kartchner's declaration, which the trial court found credible, constitutes sufficient evidence to support the trial court's factual finding that Hogrefe's claim accrued no later than 2006, we need not address the other factual findings the court made to support its ruling that Hogrefe was on inquiry notice no later than 2006.

omitted.) Although "[a]ctual testimony is sometimes preferable to declarations, and direct declarations preferable to hearsay . . . any preference for one mode or another of presenting evidence does not oust the superior court of its statutory discretion to determine whether or not to grant relief on the basis of the petitions and declarations before it." (*Id.* at p. 554.)

Because substantial evidence supports the court's finding that Hogrefe's claim accrued no later than 2006, and because the record shows he did not file either his claim or his application to file a late claim with respondents until 2019, the trial court did not abuse its discretion in determining he was not entitled to relief under section 946.6. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779 ["[w]hen the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court is without jurisdiction to grant relief under Government Code section 946.6"]; *Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 488 [same].)

IV

*Collateral Estoppel*

Both parties request that we determine in the first instance whether the trial court's ruling on the petition for relief as to the accrual and timeliness issues have preclusive effect in Hogrefe's federal action against respondents. But in resolving the precise issue before us on appeal--whether the trial court properly denied Hogrefe's petition for relief under section 946.6--we are not squarely presented with the preclusion issue. (Compare *County of Los Angeles v. Superior Court, supra*, 169 Cal.App.3d at p.1097 ["The issue raised in this original proceeding is whether a court order denying a plaintiff's petition pursuant to Government Code section 946.6 collaterally estops the plaintiff from alleging in a superior court action that she has filed a timely claim pursuant to Government Code

22

section 911.2"].)  We decline to address the issue, as it is more properly raised in the federal court where Hogrefe's complaint is still pending.

## DISPOSITION

The order denying Hogrefe's petition for relief under section 946.6 is affirmed. Respondents shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278.)


 

HULL, Acting P. J.


We concur:


RENNER, J.


KRAUSE, J.